Matthew K. Broadbent (09667)
VANNOVA LEGAL, PLLC
49 West 9000 South
Sandy, Utah 84070
Telephone: (801) 349-1523
Facsimile: (801) 349-1524
Email: law@VannovaLegal.com
*Counsel for Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH
Central Division**

| In re:<br><br>**Desarae LaShae Pearson**<br><br>Debtor. | Bankruptcy Case No.: 19-27718<br><br>Chapter 13<br><br>Honorable R. Kimball Mosier |
|---|---|
| **OBJECTION TO CLAIM NO. 1 AND CLAIM NO. 6 FILED ON BEHALF OF CASCADE COLLECTIONS, LLC** ||

Pursuant to Rule 3007 of the Bankruptcy Code, the Debtor in the above-captioned case, by and through counsel, files this Objection ("Objection") to Claim No. 1 and Claim No. 6 (collectively, the "Claims"). Both Claims were filed on behalf of Cascade Collections, LLC ("Cascade") in the amount of $14,067.46 and appear to be redundant. Debtor objects to the allowance of both Claims in the aggregate amount of $28,134.92. Debtor requests that the Court enter an order disallowing Claim No. 1 and Claim No. 6. In support of this Objection, the Debtor states as follows:

**Vehicle Purchase and Loan**

1.  On August 1, 2011, Debtor entered into a (1) Purchase Agreement and (2) Motor

Vehicle Retail Installment Sales Contract (together the "Purchase Contract" attached as **Exhibit A**) with Lucky's Auto Credit, LLC ("Lucky's") for the purchase of a 1996 Chrysler Concorde ("Vehicle") for $5,694.79.

2. The Vehicle served as collateral for an underlying loan (the "Debt").

3. The Purchase Agreement (p. 2 of 3) listed Titanium Funds LLC ("Titanium") as the lienholder.

4. Upon information and belief, Lucky's and Titanium are the same company.[1]

5. Titanium entered into a Collection Agreement and Assignment of Accounts ("Collection Agreement") with Cascade[2].

## State Case Default Judgment

6. On December 12, 2012, Cascade initiated efforts to collect the Debt by filing Case No. 129918006 ("State Case")[3].

7. The Complaint alleged that Titanium assigned the Debt to Cascade pursuant to the Collection Agreement.[4] However, Cascade did not provide (1) a bill of sale or other proof of assignment of all of Titanium's rights related to the Debt, or (2) a copy of the Collection Agreement proving the assignment of the Claim to Cascade.

8. Upon information and belief, the Collection Agreement did not assign Titanium's

---

[1] *See* Transfer of Claim Other Than for Security, Dkt 10, p. 2 of 13, ("Norwood Transfer"), *In re Danyelle Norwood*, Case No 14-22652, (Bankr D. Utah).
[2] *See* Complaint, Dkt 1, ("Complaint"), p.2 ¶ 5, *Cascade Collections LLC v Desarae Diaz*, No 129918006, (D. Utah).
[3] *See* Complaint.
[4] *Id* at p.2 ¶ 5,

ownership of the Debt to Cascade but was a contingency fee agreement which provided for Cascade to collect on Titanium's behalf.

9.　　The Complaint also alleged the Loan Agreement was assigned to Titanium "through an agreement between Titanium and the seller of the subject Vehicle"; however, the seller and Titanium are the same company.[5]

10.　　On February 11, 2013, Cascade obtained a prepetition default judgement against the Debtor.[6]

11.　　Titanium continued to report credit activity related to the Debt until March 31, 2016. (Excerpt of Bankruptcy Credit Report dated May 20, 2016 is attached as **Exhibit B**).

## The 2016 Bankruptcy

12.　　On May 23, 2016 the Debtor, as a joint debtor, filed a Chapter 7 Voluntary Petition initiating Case 16-24465 ("2016 Bankruptcy Case").[7]

13.　　Debtor listed Titanium as a creditor of the Debt on Schedule E/F: Creditors Who Have Unsecured Claims in the amount of $3,647.00 related to automobile debt.[8]

14.　　On June 5, 2016, Titanium was sent a Notice of Chapter 7 Bankruptcy Case by mail.[9]

---

[5] *See* Norwood Transfer, p. 2 of 13.
[6] *See* Default Judgment, Dkt 11, p.2 ¶ 5, *Cascade Collections LLC v Desarae Diaz*.
[7] *See* Voluntary Petition, Dkt 1, *In re Tavaras LaMar Pearson and Desarae LaShae Pearson*, Case No 16-24465, (Bankr D. Utah).
[8] *See* Statement of Financial Affairs and Schedules, Dkt 5, p. 19, *In re Pearson*.
[9] *See* Notice of Chapter 7 Bankruptcy Case, Dkt 4, *In re Pearson*.

229.UT.01

15. On August 31, 2016, this Court issued a Discharge Order[10] and placed an injunction upon the collection of all prepetition debts.

16. On September 2, 2016, Titanium was provided notice of the Discharge Order.[11]

### Post-Discharge Collection in State Case

17. On December 1, 2017, an Order Scheduling Hearing to Identify Judgment Debtor's Property Interest was entered in the State Case in favor of Cascade.[12]

18. On February 28, 2018, a bench warrant was issued against Debtor. [13]

19. On September 25, 2018, a Motion to Quash Bench Order was filed by Debtor.[14]

20. On January 15, 2019, an Order on Motion to Quash Bench Warrant, To Strike Affidavits, and to Substitute Declarations for Affidavit was entered.[15] Judge Stone ruled that the Discharge Order did not create an automatic exception to Cascade's judgment. He took care to clarify that he was not ruling on the validity of the judgment[16], and acknowledged "there is an interesting issue of the retention of an issue by the original creditor, interesting issues regarding potential notice through that creditor to the now judgment creditor."[17]

21. Cascade has never demonstrated that it is anything more than the servicing and

---

[10] *See* Order Discharging Debtors, August 31, 2016, *In re Pearson*.
[11] *See* BNC Certificate of Service – Order of Discharge, Dkt 11, *In re Pearson*.
[12] *See* Order Scheduling Hearing to Identify Judgment Debtor's Property Interests ("Supplemental Order"), Dkt 22, *Cascade Collections LLC v Desarae Diaz*.
[13] *See* Bench Warrant, Dkt 29*, Cascade Collections LLC v Desarae Diaz*.
[14] *See* Motion to Quash Bench Warrant, Dkt 37*, Cascade Collections LLC v Desarae Diaz*.
[15] *See* Order on Motion to Quash Bench Warrant, Dkt 75*, Cascade Collections LLC v Desarae Diaz*.
[16] *See* Audio Recording of Hearing on Motion to Quash Bench Warrant, To Strike Affidavits, and to Substitute Declarations for Affidavit ("Hearing Audio), 28:16 – 28:30.
[17] *Id* at 28:16 – 28:30.

collection agent for Titanium, the entity subject to the Discharge Order.

22. Claim 1 and Claim 6 are invalid because the underlying Debt was discharged in the 2016 Bankruptcy Case.

23. Claim 1 or Claim 6 is invalid because the Claims are duplicates.

24. Claim No. 1 and Claim No. 6 should be disallowed in their entirety.

WHEREFORE, Debtor respectfully requests the Court DISALLOW (1) Claim No. 1 in the amount of $14,067.46 and (2) Claim No. 6 in the amount of $14,067.46.

DATED: May 14, 2020.

VANNOVA LEGAL, PLLC

/s/
Matthew K. Broadbent
Counsel for Debtor

229.UT.01

# Exhibit A

# PURCHASE AGREEMENT

| | |
|---|---|
| Buyer Name: | DESARAE LASHAE DIAZ |
| Address & Phone: | 1264 RIVER BED DRIVE #1228, SALT LAKE CITY, UT 84119 (801) 674-1971 |
| Co-Buyer Name: | |
| Address & Phone: | N/A |
| Co-Buyer Name: | |
| Address & Phone: | N/A |
| Seller Name: | LUCKY'S AUTO CREDIT |
| Address & Phone: | 3780 S. REDWOOD RD., WEST VALLEY CITY, UT 84119 (801) 924-2777 |

These definitions apply to this Agreement: "Dealer" "us" "our" and "we" mean or refer to the Dealer named in this Agreement and who becomes a party to this Agreement by accepting it; "Buyer," "Purchaser" and "you" mean or refer to the party identified as such above; "Vehicle" is the vehicle or chassis that is the subject of this Agreement. "Trade-in" is the used vehicle that Buyer intends to use as part of the consideration for the purchase price of the Vehicle or otherwise is to be transferred to Dealer.

**Vehicle Description:** You hereby purchase from us, under the terms and conditions specified, the following vehicle:

| Stock Number: 1545 | Year: 1996 | Make: CHRYSLER | Model: CONCORDE | Body: 4 DOOR SEDAN |
|---|---|---|---|---|
| Mileage: 119768 | Tag Number: AL13463 | New/Used: USED | VIN: 2C3HD56F0TH135712 | Color: WHITE |

Optional Accessories

In disclosing the mileage and/or odometer reading of this Vehicle to you, we have relied in good faith on written information as to the mileage and/or odometer reading of the Vehicle supplied by the prior owner of the Vehicle and/or a statement of mileage that appears on the title certificate of the Vehicle issued by the state in which the vehicle was last registered.

## FINANCING ARRANGEMENT DISCLOSURE

If Purchaser agrees to be responsible for financing, or if this is a cash only or cash-plus-trade-in only transaction, check the box and Purchaser must sign below.

☐ **PURCHASER AGREES TO ARRANGE FINANCING**

THE PURCHASER OF THE MOTOR VEHICLE DESCRIBED IN THIS CONTRACT ACKNOWLEDGES THAT THE SELLER OF THE MOTOR VEHICLE HAS MADE NO PROMISES, WARRANTIES, OR REPRESENTATIONS REGARDING SELLER'S ABILITY TO OBTAIN FINANCING FOR THE PURCHASE OF THE MOTOR VEHICLE. FURTHERMORE, PURCHASER UNDERSTANDS THAT IF FINANCING IS NECESSARY IN ORDER FOR THE PURCHASER TO COMPLETE THE PAYMENT TERMS OF THIS CONTRACT ALL THE FINANCING ARRANGEMENTS ARE THE SOLE RESPONSIBILITY OF THE PURCHASER.

| N/A | N/A | N/A |
|---|---|---|
| Buyer Signs | Co-Buyer Signs | Co-Buyer Signs |

If Seller agrees to arrange for financing, check the box and Purchaser and Seller must sign below.

☒ **SELLER AGREES TO SEEK ARRANGEMENTS FOR FINANCING**

(1) THE PURCHASER OF THE MOTOR VEHICLE DESCRIBED IN THIS CONTRACT HAS EXECUTED THE CONTRACT IN RELIANCE UPON THE SELLER'S REPRESENTATION THAT THE SELLER CAN PROVIDE FINANCING ARRANGEMENTS FOR THE PURCHASE OF THE MOTOR VEHICLE. THE PRIMARY TERMS OF THE FINANCING ARE AS FOLLOWS:
INTEREST RATE BETWEEN 24.95 % AND 24.95 % PER ANNUM, TERM BETWEEN 20 MONTHS AND 20 MONTHS. MONTHLY PAYMENTS BETWEEN $ 320.00 PER MONTH AND $ 480.00 PER MONTH BASED ON A DOWN PAYMENT OF $ 50.00 .
(2)(a) IF SELLER IS NOT ABLE TO ARRANGE FINANCING WITHIN THE TERMS DISCLOSED, THEN SELLER MUST WITHIN SEVEN CALENDAR DAYS OF THE DATE OF SALE MAIL NOTICE TO THE PURCHASER THAT HE HAS NOT BEEN ABLE TO ARRANGE FINANCING. (b) PURCHASER THEN HAS 14 DAYS FROM THE DATE OF SALE TO ELECT, IF PURCHASER CHOOSES, TO RESCIND THE CONTRACT OF SALE PURSUANT TO SECTION 41-3-401.
IN ORDER TO RESCIND THE CONTRACT OF SALE, THE PURCHASER SHALL:
    (i) RETURN TO SELLER THE MOTOR VEHICLE HE PURCHASED;
    (ii) PAY THE SELLER AN AMOUNT EQUAL TO THE CURRENT STANDARD MILEAGE RATE FOR THE COST OF OPERATING A MOTOR VEHICLE ESTABLISHED BY THE FEDERAL INTERNAL REVENUE SERVICE FOR EACH MILE THE MOTOR VEHICLE HAS BEEN DRIVEN; AND
    (iii) COMPENSATE SELLER FOR ANY PHYSICAL DAMAGE TO THE MOTOR VEHICLE.
(3) IN RETURN, SELLER SHALL GIVE BACK TO THE PURCHASER ALL PAYMENTS OR OTHER CONSIDERATION PAID BY THE PURCHASER, INCLUDING ANY DOWN PAYMENT AND ANY MOTOR VEHICLE TRADED IN. (4) IF THE TRADE-IN HAS BEEN SOLD OR OTHERWISE DISPOSED OF BEFORE THE PURCHASER RESCINDS THE TRANSACTION, THEN THE SELLER SHALL RETURN TO THE PURCHASER A SUM EQUIVALENT TO THE ALLOWANCE TOWARD THE PURCHASE PRICE GIVEN BY THE SELLER FOR THE TRADE-IN, AS NOTED IN THE DOCUMENT OF SALE.
(5) IF PURCHASER DOES NOT ELECT TO RESCIND THE CONTRACT OF SALE AS PROVIDED IN SUBSECTION (2)(b) OF THIS FORM: (a) THE PURCHASER IS RESPONSIBLE FOR ADHERENCE TO THE TERMS AND CONDITIONS OF THE CONTRACT OR RISKS BEING FOUND IN DEFAULT OF THE TERMS AND CONDITIONS; (b) THE TERMS AND CONDITIONS OF THE DISCLOSURES SET FORTH IN SECTION (1) OF THIS FORM ARE NOT BINDING ON THE SELLER; AND (c) IF FINANCING IS NECESSARY FOR THE PURCHASER TO COMPLETE THE PAYMENT TERMS OF THE CONTRACT OF SALE, THE PURCHASER IS SOLELY RESPONSIBLE FOR MAKING ALL THE FINANCING ARRANGEMENTS.
(6) SIGNING THIS DISCLOSURE DOES NOT PROHIBIT THE PURCHASER FROM SEEKING HIS OWN FINANCING.

| /s/ D. Diaz | N/A | N/A |
|---|---|---|
| Buyer Signs | Co-Buyer Signs | Co-Buyer Signs |

LUCKY'S AUTO CREDIT     By X /s/
Seller Signs

HC# 4847-6233-2936.v2 – 12/10
UT

Page 1 of 3

Customer Initials

Autostar Solutions, Inc

PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN ATTORNEY.

# PURCHASE AGREEMENT

| TRADE INFO | | | | TRADE INFO | | | |
|---|---|---|---|---|---|---|---|
| Year: 1994 | Make: BUICK | Model: SKYLARK | | Year: N/A | Make: N/A | Model: N/A | |
| VIN: 1G4NV5537RC301346 | Stock #: 1545A | Mileage: 0 | | VIN: N/A | Stock #: N/A | Mileage: N/A | |

| LIEN PAYOFF INFO | | ITEMIZATION | |
|---|---|---|---|
| Payoff Amount: | 0.00 | Cash Price of Vehicle | $ 4995.00 |
| Payoff Good Thru: | | Accessories | $ 0.00 |
| Payoff To: | | Service Contract | $ 0.00 |
| Payoff Address: | | Sales Tax | $ 359.28 |
| Payoff City: | | Documentary Fee | $ 600.00 |
| Payoff State: | | State Inspection/Emissions Test | $ 44.50 |
| Payoff Zip: | | Title Fees | $ 10.00 |
| LIEN INFORMATION | | Registration Fees | $ 0.00 |
| Lienholder Name: | TITANIUM FUNDS LLC | License Plate Fees | $ 75.00 |
| Lienholder Address: | 3780 SOUTH REDWOOD ROAD | Automobile Driver Education Fees | $ 0.00 |
| Lienholder City: | SALT LAKE CITY | Uninsured Motorist Identification Fees | $ 0.00 |
| Lienholder State: | UT | Age Based/Property Assessment Fees | $ 11.01 |
| Lienholder Zip: | 84119 | Tire Recycling Fee | $ 0.00 |
| Lien Date: | 08/01/2011 | N/A | $ 0.00 |
| | | N/A | $ 0.00 |
| | | N/A | $ 0.00 |
| | | **TOTAL CASH PRICE** | $ 6094.79 |
| | | Credit Life & A&H Insurance | $ 0.00 |
| | | GAP/Single Interest Insurance | $ 0.00 |
| | | N/A | $ 0.00 |
| | | N/A | $ 0.00 |
| | | N/A | $ 0.00 |
| | | Trade-In Amount | $ 350.00 |
| | | Trade-In Payoff Amount | $ 0.00 |
| | | Cash Down Payment | $ 50.00 |
| | | Deferred Down Payment | $ 0.00 |
| | | **TOTAL DOWN PAYMENT** | $ 400.00 |
| | | **UNPAID BALANCE** | $ 5694.79 |

By initialing below, you represent and warrant with regard to any trade in:

_____ 1. The true and actual mileage is as stated above. The odometer is working at this time and has not been repaired or replaced.

_____ 2. The vehicle(s) has not been designated a total loss or unrepairable by an insurance company and has not been issued a salvage, rebuilt and/or reconditioned title, and has not been exposed to flood damage.

ALL WARRANTIES, IF ANY, BY A MANUFACTURER OR SUPPLIER OTHER THAN DEALER ARE THEIRS, NOT OURS. ONLY SUCH MANUFACTURER OR OTHER SUPPLIER SHALL BE LIABLE FOR PERFORMANCE UNDER SUCH WARRANTIES, UNLESS WE FURNISHED YOU WITH A SEPARATE WRITTEN WARRANTY OR SERVICE CONTRACT MADE BY US ON OUR OWN BEHALF. WE NEITHER ASSUME NOR AUTHORIZE ANY PERSON TO ASSUME FOR US ANY LIABILITY IN CONNECTION WITH THE SALE OF ANY PRODUCTS. UNLESS WE MAKE A WRITTEN WARRANTY ON OUR OWN BEHALF, OR ENTER INTO A SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS ORDER, **WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, ON THE VEHICLE, AND THERE WILL BE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.** THIS PROVISION DOES NOT AFFECT ANY MANUFACTURER OR SUPPLIER WARRANTIES COVERING THE VEHICLE.

☒ If this box is checked, the vehicle you are trading in is subject to an unpaid loan, lease or other obligation. You remain responsible for the unpaid loan, lease or other obligation despite the trade-in of the vehicle. By signing below, you acknowledge that you remain responsible for payment of the unpaid loan, lease or other obligation.

X _____  N/A  X _____  N/A  X _____  N/A
Buyer Signs          Date    Co-Buyer Signs         Date    Co-Buyer Signs         Date

You agree that this Agreement includes all of the terms and conditions on all pages of this Agreement. You certify that you are of legal age or older and acknowledge that you have read its terms and have received a true copy of it. If you are buying the Vehicle for cash (this includes arranging your own financing from a party other than us), this Agreement shall become final and binding when it is signed by our authorized representative. If you are buying the Vehicle in a credit sale transaction with us evidenced by a signed retail installment sales contract, this Agreement becomes binding when you sign it and the retail installment sales contract. You agree to sign such agreements or documents as we may require to effect the terms and conditions of payment shown in this Agreement. You or we may rescind the retail installment sales transaction if we are unable to assign the retail installment sales contract to a financial institution.

X [signature]   08/01/2011   X N/A   N/A   X N/A   N/A
Buyer Signs      Date         Co-Buyer Signs   Date   Co-Buyer Signs   Date

Dealer or Authorized Representative: LUCKY'S AUTO CREDIT         By X [signature]   Date: 08/01/2011

# PURCHASE AGREEMENT

**OTHER TERMS AND CONDITIONS**

1. PURCHASE OF A NEW VEHICLE. If this Agreement is for the sale of a new vehicle, this paragraph applies. "Manufacturer" means the corporation that manufactured the Vehicle. We are not the Manufacturer's agent. You and we are the sole parties to this Agreement. References in this Agreement to Manufacturer are for the purpose of describing certain contractual relationships between the Manufacturer and us relating to new vehicles. The Manufacturer may change the design of any vehicle, chassis, accessories, or parts at any time without notice and without obligation. The Manufacturer may also make the same or any similar change upon any vehicle, chassis, accessories, or parts already bought by or shipped to us or being manufactured or sold in accordance with our orders. If the Manufacturer makes such a change, we have no obligation to you to make the same or any similar change in the Vehicle or its parts either before or after we deliver the Vehicle to you. The Manufacturer may change our price of new vehicles without notice. If that happens with regard to new vehicles of the series and body type of the Vehicle before we deliver it to you, we may change the cash delivered price of the Vehicle to you accordingly. If we do, you may cancel this Agreement. If you cancel, we shall return any Trade-in to you, unless we have sold it. You agree to pay reasonable storage and repair charges. If we have sold the Trade-in, we shall pay you the sales price of the Trade-in, less a sales commission of  N/A  % and any expense in storing, insuring, conditioning or advertising it for sale.

2. TRADE-IN. If you don't deliver your Trade-in to us until we deliver the Vehicle to you, we will reappraise the Trade-in at that time. The reappraised value will be the allowance for the Trade-in. If the reappraised value is lower than the amount shown in this Agreement, you may cancel this Agreement. You must exercise your right to cancel before we deliver the Vehicle to you and you surrender the Trade-in to us. You agree to give us satisfactory evidence of title to any Trade-in when you deliver it to us. You warrant any Trade-in to be your property. You warrant that the Trade-in is free and clear of all liens and encumbrances unless otherwise noted in this Agreement. You represent that the Trade-in's mileage shown in this Agreement is the actual mileage on the Trade-in unless you have noted other mileage on this Agreement. You authorize us to rely on this representation in entering into this transaction. Payoff information shown in this Agreement is provided by you and/or your lienholder. Should the actual payoff(s) be less, we will refund the difference to you. If the payoff(s) is more, you agree to remit the difference to us within three business days of notification of the difference. You represent and certify that any Trade-in vehicle does not have and has never had a salvage, flood damaged or reconditioned title. If you provide false information, you will repurchase the related Trade-in from us for the full price allowed to you plus all costs we incur in resolving this matter including but not limited to reconditioning costs, legal fees, court and collection costs.

3. OUR FAILURE TO DELIVER THE VEHICLE. We are not liable for failure to deliver or delay in delivering the Vehicle where such failure or delay is due, in whole or in part, to any cause beyond our control or without our fault or negligence. If you fail or refuse to accept delivery of the Vehicle or comply with this Agreement, we may keep as liquidated damages any cash deposit you made, to the extent not prohibited by law. To the extent not prohibited by law, we may reimburse ourselves, from any cash deposit you made, for any expenses and losses we incur or suffer as a result of your failure or refusal. Such expenses and losses may include our reasonable attorneys' fees. This section doesn't apply if you cancel this Agreement under section 2.

4. VEHICLE PRICE; TAXES. The Vehicle price includes reimbursement for Federal Excise taxes. The Vehicle price doesn't include sales taxes, use taxes or occupational taxes based on sales volume, (federal, state or local) unless expressly so stated. You agree to pay, unless prohibited by law, any such taxes imposed on or that apply to the transaction reflected by this Agreement, regardless of who has primary liability for the tax.

5. CREDIT INSURANCE. If this Agreement shows a charge for Credit Insurance, this paragraph applies. The Credit Insurance provisions in any retail installment contract you later sign related to this Agreement will apply. If such insurance is wholly or partly unavailable under the designated policy, we will deduct the applicable part of the Credit Insurance charge shown in this Agreement and the related finance charge from the Total Time Balance. If such insurance does not become effective, we will notify you of that fact. This Agreement and any related retail installment contract you sign shall otherwise remain fully effective, to the extent provided by applicable law.

6. YOUR OBLIGATIONS IF THERE IS AN UNPAID BALANCE. This Agreement is an agreement to buy the Vehicle. If there is an Unpaid Balance, your obligation to buy and our obligation to sell the Vehicle are expressly conditioned upon you obtaining financing for the Unpaid Balance. You have two business days from the date of this Agreement to obtain such financing. If you pay us with a check that is dishonored or unpaid for any reason, we may, at our sole option, declare this Agreement null and void and retake the Vehicle, or make claims against you on the check. In addition, we will charge you a $25 returned check charge.

7. IF THE PURCHASE OR FINANCING IS NOT COMPLETED. If for any reason you and we do not complete the Vehicle sale and purchase, financing is not obtained, or this Agreement is declared void, this section applies. You will return the Vehicle to us. You will pay us on demand all reasonable charges and expenses for any damage to the Vehicle. You will pay us the greater of $.30 per mile or $20 per day for your use of the Vehicle. When you have paid us the amounts you owe under this Agreement, we will return the Trade-in. If you fail to return the Vehicle within 24 hours of notice, you agree that we may, solely at our option, cancel the sale and retake immediate possession of the Vehicle and, in addition to those charges specified above, you agree to pay us all reasonable expenses we incur in connection with retaking the Vehicle, including attorneys' fees and other expenses to the extent permitted by applicable law.

8. INCONSISTENT TERMS. In the event that any of the terms and conditions of this Agreement are inconsistent with the terms and conditions of any retail installment sales contract between you and us, the terms of such retail installment sales contract shall apply.

9. **Used motor vehicle buyers guide: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
**Guía para compradores de vehículos usados: La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**



HC# 4847-6233-2936.v2 – 12/10
UT

Page 3 of 3

Customer Initials _____
Autostar Solutions, Inc

PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE CONTENT OR FITNESS OF THIS FORM. CONSULT YOUR OWN ATTORNEY.

# MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT

Date: 08/01/2011

Buyer Name, Address & Phone: DESARAE LASHAE DIAZ
1264 RIVER BED DRIVE #1228, SALT LAKE CITY, UT 84119 (801) 674-1971

Co-Buyer Name, Address & Phone: N/A

Co-Buyer Name, Address & Phone: N/A

Co-Signer Name, Address & Phone: N/A

Seller Name, Address & Phone: LUCKY'S AUTO CREDIT
3780 S. REDWOOD RD., WEST VALLEY CITY, UT 84119 (801) 924-2777

The Buyer is referred to as "I" or "me" or "my". The Seller is referred to as "you" or "your." This contract may be transferred by the Seller.

**PROMISE TO PAY:** By signing this contract, I choose to purchase the motor vehicle on credit according to the terms of this contract. The Federal Truth in Lending Disclosures set out below ("TILA Disclosures") are part of this contract. I agree to pay you the Amount Financed, finance charges, and any other charges in this contract to you in U.S. funds. I agree to make payments according to the Payment Schedule in the TILA Disclosures. If more than one person signs as a buyer, each agrees to keep all the promises in this contract even if the others do not. I have thoroughly inspected, accepted, and approved the motor vehicle in all respects.

## MOTOR VEHICLE IDENTIFICATION

| Stock No. | Year, Make, Model | Vehicle Identification Number | License Number (if applicable) | New / Demonstrator / Factory Official./Exec / Used | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| 1545 | 1996 CHRYSLER CONCORDE | 2C3HD56F0TH135712 | AL13463 | ☒ Used | ☒ Personal, Family, Household / ☐ Business Or Commercial / ☐ Agricultural |

Trade-in: Year 1994  Make BUICK  Model SKYLARK  VIN 1G4NV5537RC301346  License No. _____

Trade-in: Year N/A  Make N/A  Model N/A  VIN N/A  License No. N/A

## FEDERAL TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. | Total Sale Price The total cost of my purchase on credit, including down payment of $ 400.00 |
|---|---|---|---|---|
| 24.88 % | $ 1283.69 | $ 5694.79 | $ 6978.48 | $ 7378.48 |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 43 | 160.00 | BI-WEEKLY BEGINNING: 08/12/2011 |
| 1 | 98.48 | FINAL PAYMENT DUE ON: 04/05/2013 |

**Security:** You will have a security interest in the motor vehicle being purchased.

**Late Charge:** ☒ If this box is checked, and I don't make a payment within 10 days of its due date, I will pay a late charge. The late charge will be the greater of $30 or 5% of the amount not paid on time.

**Prepayment:** If I pay all that I owe early, I will not have to pay a penalty.

**Additional Information:** See the contract documents for any additional information about nonpayment, default, security interests, any required repayment in full before the scheduled date, and prepayment refunds.

### DEFERRED DOWNPAYMENTS

| Due Date | Amount | Due Date | Amount |
|---|---|---|---|
| N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A |

*In this box, the word "you" refers to the Buyer*
**Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
**Spanish Translation:** Guía para compradors de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

HC# 4832-5074-2280 – 11/10
Utah

Page 1 of 4

Customer Initials _____

Autostar Solutions, Inc

PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN ATTORNEY.

## Itemization of Amount Financed

1. Cash Price (including any accessories, services and $ 359.28 sales tax) — $ 5354.28 (1)

2. Downpayment

   | | |
   |---|---|
   | Gross trade-in | $ 350.00 |
   | - payoff by seller | $ 0.00 |
   | = net trade-in | $ 350.00 |
   | + Cash Downpayment | $ 50.00 |
   | + Deferred Downpayment | $ 0.00 |
   | + Manufacturer's Rebate | $ 0.00 |
   | + other N/A | $ 0.00 |

   Total Downpayment (if negative, enter "0" and see Line 4.A. below) — $ 400.00 (2)

3. Unpaid balance of cash price (1 minus 2) — $ 4954.28 (3)

4. Other charges including amounts paid to others on my behalf (Seller may keep part of these amounts.):
   - A. Prior credit or lease balance paid to N/A — $ 0.00
   - B. Cost of physical damage insurance paid to insurance company — $ 0.00
   - C. Cost of optional coverages with physical damage insurance paid to insurance company — $ 0.00
   - D. Cost of optional credit insurance paid to insurance company or companies — $ 0.00
     - Credit Life N/A  $ N/A
     - Disability N/A  $ N/A
   - E. Other insurance paid to the insurance company — $ 0.00
   - F. Official fees paid to government agencies — $ 0.00
   - G. Other taxes — $ 0.00
   - H. Government license and/or registration fees — $ 75.00
   - I. Government certificate of title fee — $ 10.00
   - J. Government vehicle inspection fees — $ 44.50
   - K. Other charges (Seller must identify who is paid and describe purpose)

   | To | For | |
   |---|---|---|
   | N/A | GAP Waiver Contract | $ 0.00 |
   | DEALER | DOCUMENT PROCESSING | $ 600.00 |
   | N/A | N/A | $ 0.00 |
   | DEALER | TEMP TAG | $ 11.01 |
   | N/A | N/A | $ 0.00 |
   | N/A | N/A | $ 0.00 |

   Total Other Charges and Amounts Paid To Others On My Behalf — $ 740.51 (4)

5. **Amount Financed** (3 + 4) — $ 5694.79 (5)

---

**Optional GAP Waiver (Debt Cancellation) Contract.** A GAP Waiver Contract is optional. My purchase of a GAP Waiver Contract is not required to obtain credit and will not be provided unless I sign below and agree to pay the extra charge. If I agree to buy a GAP Waiver Contract, the charge is shown in Line Item 4.K. of the Itemization of Amount Financed. My GAP Waiver Contract is a part of this Contract. I can see my GAP Waiver Contract for details on the protection it provides.

Term N/A

I/We want to purchase the optional GAP Waiver Contract:
Buyer Signs: N/A        Co-Buyer Signs: N/A

---

**OTHER TERMS AND CONDITIONS**

**HOW YOU FIGURE THE FINANCE CHARGE**: This is a simple interest contract. The annual contract interest rate is 24.95 %. This annual contract interest rate may not be the same as the Annual Percentage Rate shown in the TILA Disclosures. Interest will accrue on the unpaid principal balance on a daily basis at 1/365th of the annual rate (1/366th in a leap year). The unpaid principal balance does not include late charges or returned check charges.

You based the Finance Charge, Total of Payments, and Total Sale Price shown in the TILA Disclosures on the assumption that I will make every payment on the day it is due. My Finance Charge, Total of Payments, and Total Sale Price will be more if I pay late and less if I pay early. Changes may take the form of a larger or smaller final payment or, at your option, more or fewer payments of the same amount as my scheduled payment with a smaller final payment. If all my scheduled payments are equal, you will give me at least 25 days after the final scheduled payment is due to pay any extra amount I owe because I paid late.

**HOW YOU WILL APPLY MY PAYMENTS**: You will apply my payments in the following order:
1. earned but unpaid finance charge; and
2. to anything else I owe under this agreement.

**INTEREST AFTER MATURITY**: If I don't pay all I owe when the final payment becomes due, I will pay interest on the amount that is still unpaid. The interest rate will be the higher of 18% per year or the maximum rate allowed by law, if that rate is higher. The interest rate for this amount will begin the day after the final payment becomes due.

HC# 4832-5074-2280 – 11/10              Page 2 of 4              Customer Initials _____
Utah                                                              Autostar Solutions, Inc
PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN ATTORNEY.

**LIABILITY INSURANCE:** UNLESS A CHARGE FOR LIABILITY INSURANCE IS INCLUDED IN THE ITEMIZATION OF AMOUNT FINANCED, LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.

**PROPERTY INSURANCE:** **I agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract.** The insurance must cover your interest in the vehicle. The insurance must include collision coverage and either comprehensive or fire, theft, and combined additional coverage, with acceptable deductibles. **I must maintain a Comprehensive deductible not more than $ 500.00     and a Collision deductible amount not more than $ 500.00     . I must keep this insurance until I have paid all that I owe under this contract. I may obtain property insurance from anyone I want or provide proof of insurance I already have.** I agree to give you proof of property insurance. I must name you as the person to be paid under the policy in the event of damage or loss.

**YOUR RIGHT TO BUY REQUIRED INSURANCE IF I FAIL TO KEEP THE MOTOR VEHICLE INSURED:** If I fail to give you proof that I have insurance, you may buy physical damage insurance. You may buy insurance that covers my interest and your interest in the motor vehicle, or you may buy insurance that covers your interest only. I will pay the premium for the insurance and a finance charge at the contract rate. If you obtain collateral protection insurance, you will mail notice to my last known address shown in your file.

**PHYSICAL DAMAGE INSURANCE PROCEEDS:** I must use physical damage insurance proceeds to repair the motor vehicle, unless you agree otherwise in writing. However, if the motor vehicle is a total loss, I must use the insurance proceeds to pay what I owe you. I agree that you can use any proceeds from insurance to repair the motor vehicle, or you may reduce what I owe under this contract. If you apply insurance proceeds to the amount I owe, they will be applied to my payments in the reverse order of when they are due. If my insurance on the motor vehicle or credit insurance doesn't pay all I owe, I must pay what is still owed. Once all amounts owed under this contract are paid, any remaining proceeds will be paid to me.

**RETURNED INSURANCE PREMIUMS AND SERVICE CONTRACT CHARGES:** If you get a refund on insurance or service contracts, or other contracts included in the cash price, you will subtract it from what I owe. Once all amounts owed under this contract are paid, any remaining refunds will be paid to me.

**APPLICATION OF CREDITS:** Any credit that reduces my debt will apply to my payments in the reverse order of when they are due, unless you decide to apply it to another part of my debt. The amount of the credit and all finance charge or interest on the credit will be applied to my payments in the reverse order of my payments.

**TRANSFER OF RIGHTS:** You may transfer this contract to another person. That person will then have all your rights, privileges, and remedies.

**SECURITY INTEREST:** To secure all I owe on this contract and all my promises in it, I give you a security interest in
- the motor vehicle including all accessories and parts now or later attached;
- all insurance proceeds and other proceeds received for the motor vehicle;
- any insurance policy, service contract or other contract financed by you and any proceeds of those contracts; and
- any refunds of charges included in this contract for insurance, or service contracts.

This security interest also secures any extension or modification of this contract. The certificate of title must show your security interest in the motor vehicle.

**USE AND TRANSFER OF THE MOTOR VEHICLE:** I will not sell or transfer the motor vehicle without your written permission. If I do sell or transfer the motor vehicle, this will not release me from my obligations under this contract. I will promptly tell you in writing if I change my address or the address where I keep the motor vehicle. I will not remove the motor vehicle from the state of my residence for more than 30 days unless I first get your written permission.

**CARE OF THE MOTOR VEHICLE:** I agree to keep the motor vehicle free from all liens, and claims except those that secure this contract. I will timely pay all taxes, fines, or charges pertaining to the motor vehicle. I will keep the motor vehicle in good repair. I will not allow the motor vehicle to be seized or placed in jeopardy or use it illegally. I must pay all I owe even if the motor vehicle is lost, damaged or destroyed. If a third party takes a lien or claim against or possession of the motor vehicle, you may pay the third party any cost required to free the motor vehicle from all liens or claims. You may immediately demand that I pay you the amount paid to the third party for the motor vehicle. If I do not pay this amount, you may repossess the motor vehicle and add that amount to the amount I owe. If you do not repossess the motor vehicle, you may still demand that I pay you, but you cannot compute a finance charge on this amount.

**DEFAULT:** I will be in default if:
- I do not pay any amount when it is due;
- I break any of my promises in this agreement;
- I allow a judgment to be entered against me or the collateral; or
- I file bankruptcy, bankruptcy is filed against me, or the motor vehicle becomes involved in a bankruptcy.

If I default, you can exercise your rights under this contract and your other rights under the law.

**LATE CHARGE:** I will pay you a late charge on each late payment as shown in the TILA Disclosures.

**RETURNED CHECK CHARGE:** If any payment I give you is unpaid for any reason, I agree to pay a returned check charge of $20 as permitted by law.

**NEGATIVE CREDIT REPORT:** As required by Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

**REPOSSESSION:** If I default, you may repossess the motor vehicle from me if you do so peacefully. If any personal items are in the motor vehicle, you can store them for me and give me written notice at my last address shown on your records within 15 days of discovering that you have my personal items. If I do not ask for these items back within 31 days from the day you mail or deliver the notice to me, you may dispose of them as applicable law allows. Any accessory, equipment, or replacement part stays with the motor vehicle.

**MY RIGHT TO REDEEM:** If you take my motor vehicle, you will tell me how much I have to pay to get it back. If I do not pay you to get the motor vehicle back, you can sell it or take other action allowed by law. My right to redeem ends when the motor vehicle is sold or you have entered into a contract for sale or accepted the collateral as full or partial satisfaction of a contract.

**DISPOSITION OF THE MOTOR VEHICLE:** If I don't pay you to get the motor vehicle back, you can sell it or take other action allowed by law. You will send me notice at least 10 days before you sell it. You can use the money you get from selling it to pay allowed expenses and to reduce the amount I owe. Allowed expenses are expenses you pay as a direct result of taking the motor vehicle, holding it, preparing it for sale, and selling it. If any money is left, you will pay it to me unless you must

HC# 4832-5074-2280 – 11/10                                   Page 3 of 4                                   Customer Initials _____
Utah                                                                                                       Autostar Solutions, Inc

PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN ATTORNEY.

# Exhibit B

# Bankruptcy Credit Report™ | Preferred



*Prepared for Vannova Legal, PLLC*

| **Report Type:** Joint Preferred BCR | **Report Number:** 4316974 | **Client Code:** A21486 | **Reported Date:** 05/20/2016 |

## Non-Mortgage Liabilities with Balances

41 Record(s)

| Account Details | Balance Details | Account Dates | Payment Details | Bankruptcy-Specific Address | Bureau Reported Address | Owner & Source |
|---|---|---|---|---|---|---|
| **Name:** California Business Bu<br>**Type:** Individual / Applicant<br>**Account:** XXXXX4201<br>**Status:** Open, Collection<br>Open<br>**Original Creditor:** ANAHEIM REGIONAL MED CTR | **Current:** $26,450<br>**High Credit:** $41,256 | **Date Opened:** 04/01/2014<br>**Last Reported:** 10/28/2014<br>**Last Activity:** | **Monthly:** $0<br>**Past Due:** $26,450<br>**Pay History:** ---9-------- | California Business Bu<br>1711 S Mountain Ave<br>Monrovia, CA 91016<br>626-303-1515<br>**Verified:** 05/2016 | 1711 S Mountain Ave<br>Monrovia, CA 91016<br>800-755-1515 | 1 TU, EX |
| **Name:** Gm Financial<br>**Type:** Joint Contractual Liability / Joint<br>**Account:** XXXXX6852<br>**Status:** Open, Current Account<br>Installment | **Current:** $10,550<br>**High Credit:** $11,105 | **Date Opened:** 11/01/2015<br>**Last Reported:** 05/12/2016<br>**Last Activity:** 05/11/2016 | **Monthly:** $277<br>**Past Due:** $0<br>**Pay History:** CCCCC | AmeriCredit/GM Financial<br>PO Box 183583<br>Arlington, TX 76096<br>**Verified:** 01/2016 | Po Box 181145<br>Arlington, TX 76096<br>800-284-2271 | 1 TU, EX<br>2 TU, EX |
| **Name:** Fed Loan Serv<br>**Type:** Individual / Applicant<br>**Account:** XXXXXXXXXXXXX0002<br>**Status:** Open, Current Account<br>Installment | **Current:** $6,318<br>**High Credit:** $6,000 | **Date Opened:** 10/01/2013<br>**Last Reported:** 04/30/2016<br>**Last Activity:** 04/30/2016 | **Monthly:** $0<br>**Past Due:** $0<br>**Pay History:** CCCCCCCCCCC | Fed Loan Servicing<br>PO Box 69184<br>Harrisburg, PA 17106<br>**Verified:** 10/2015 | Po Box 60610<br>Harrisburg, PA 17106<br>800-699-2908 | 1 TU, EX |
| **Name:** Fed Loan Serv<br>**Type:** Individual / Applicant<br>**Account:** XXXXXXXXXXXXX0004<br>**Status:** Open, Current Account<br>Installment | **Current:** $6,172<br>**High Credit:** $6,000 | **Date Opened:** 05/01/2014<br>**Last Reported:** 04/30/2016<br>**Last Activity:** 04/30/2016 | **Monthly:** $0<br>**Past Due:** $0<br>**Pay History:** CCCCCCCCCCC | Fed Loan Servicing<br>PO Box 69184<br>Harrisburg, PA 17106<br>**Verified:** 10/2015 | Po Box 60610<br>Harrisburg, PA 17106<br>800-699-2908 | 1 TU, EX |
| **Name:** Fed Loan Serv<br>**Type:** Individual / Applicant<br>**Account:** XXXXXXXXXXXXX0003<br>**Status:** Open, Current Account<br>Installment | **Current:** $4,586<br>**High Credit:** $4,500 | **Date Opened:** 05/01/2014<br>**Last Reported:** 04/30/2016<br>**Last Activity:** 04/30/2016 | **Monthly:** $0<br>**Past Due:** $0<br>**Pay History:** CCCCCCCCCCC | Fed Loan Servicing<br>PO Box 69184<br>Harrisburg, PA 17106<br>**Verified:** 10/2015 | Po Box 60610<br>Harrisburg, PA 17106<br>800-699-2908 | 1 TU, EX |
| **Name:** Titaniumfund<br>**Type:** Undesignated / Co-Applicant<br>**Account:** X5451<br>**Status:** Closed, Account Closed By Grantor<br>Installment | **Current:** $3,647<br>**High Credit:** $5,695 | **Date Opened:** 08/01/2011<br>**Last Reported:** 03/31/2016<br>**Last Activity:** 04/12/2012 | **Monthly:** $347<br>**Past Due:** $3,647<br>**Pay History:** Not Available | | 1265 S State St<br>Clearfield, UT 84015<br>877-682-3553 | 2 TU |

**Note:** Source represents who reported the specific account. **(TU = TransUnion, EQ = Equifax, EX = Experian, LN = LexisNexis)**. For a full explanation of each category, see "How to read a tradeline" at the end of this report.

