**This order is SIGNED.**

**Dated: February 8, 2023**





**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>DESARAE LASHAE PEARSON,<br><br>Debtor. | Bankruptcy Number: 19-27718<br><br>Chapter 13<br><br>Hon. R. Kimball Mosier |

## MEMORANDUM DECISION

This case concerns the question of when pursuit of a legal argument crosses the line that separates zealous advocacy for one's client from sanctionable conduct. Debtor Desarae Pearson borrowed money to buy a car and gave Titanium Funds LLC a lien on the vehicle to secure the loan. When she defaulted, Cascade Collections LLC obtained a default judgment against her for the deficiency and has since sought to collect it from her. The trouble is that she believes that Titanium is the true owner of that judgment. And since she and her spouse filed bankruptcy after entry of that default judgment—in which they provided timely notice of the case to Titanium, though not Cascade—she also believes that the judgment has been discharged, thereby extinguishing her personal liability on the debt.

The Debtor has attempted to pursue her argument concerning the ownership and validity of the default judgment in multiple forums but has suffered adverse rulings instead. First, Cascade's judgment was declared excepted from the Debtor's discharge during state court supplemental proceedings. Then, when the Debtor tried to reopen her prior bankruptcy case to litigate the issue, the bankruptcy court ruled that it lacked subject-matter jurisdiction to alter the state court's determinations.

The Debtor filed this case with the hope of taking another shot at her argument concerning the ownership and validity of the default judgment. And when Cascade filed a proof of claim based on that judgment—which had swelled with interest, fees, and costs—she objected, setting in motion the process to raise that argument again. But Cascade had had enough. Noting that the Debtor was relitigating matters previously decided, it sought sanctions against Matthew Broadbent, the Debtor's counsel, through its Motion for Rule 9011 Sanctions (Motion for Sanctions), which is the matter presently before the Court.

The Court conducted an evidentiary hearing on the Motion for Sanctions, at which it received evidence, heard Broadbent's testimony, and heard the oral arguments of the parties. After reviewing and weighing the evidence and the record before it, considering the parties' oral arguments, and conducting an independent review of applicable law, the Court issues the following Memorandum Decision granting the Motion for Sanctions.[1]

---

[1] This Memorandum Decision constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a), made applicable in contested matters by Fed. R. Bankr. P. 9014 and 7052. Any of the findings of fact herein are deemed, to the extent appropriate, to be conclusions of law, and any conclusions of law are similarly deemed, to the extent appropriate, to be findings of fact, and they shall be equally binding as both.

# I. JURISDICTION

The Court's jurisdiction over this contested matter is properly invoked pursuant to 28 U.S.C. § 1334 and § 157(b)(1). A motion seeking sanctions under Rule 9011 is a core proceeding within the definition of 28 U.S.C. § 157(b)(2)(A) and (O),[2] and the Court may enter a final order. Venue is appropriate under 28 U.S.C. § 1409.

# II. FACTUAL BACKGROUND

On August 1, 2011, the Debtor, then known as Desarae Diaz, bought a used car from Lucky's Auto Credit.[3] She financed the purchase, and an entity named Titanium Funds LLC was listed as the lienholder on the vehicle.[4]

Titanium subsequently entered into a Collection Agreement and Assignment of Accounts dated July 10, 2012 (Collection Agreement) with Cascade Collections LLC, which provides, among other things, that Cascade would "provide debt collection and recovery services on all accounts placed by [Titanium] and assigned to [Cascade]," and which gave Cascade "the legal right to collect on the accounts" placed for collection with it by Titanium, including "bring[ing] suit against the account debtors in its own name."[5]

Titanium placed the Debtor's account concerning the vehicle with Cascade for collection. Cascade then initiated collection efforts by filing a lawsuit in the Third Judicial District Court of

---

[2] *In re Lisse*, 567 B.R. 813, 816 (Bankr. W.D. Wis. 2017) (citing *Baermann v. Ryan (In re Ryan)*, 411 B.R. 609, 613 (Bankr. N.D. Ill. 2009)).
[3] Ex. A, at 1 of the Purchase Agreement.
[4] *Id.* at 1-2 of the Purchase Agreement and 1-2 of the Motor Vehicle Retail Installment Sales Contract.
[5] Ex. 1, ¶¶ 1, 4.

Utah in and for Salt Lake County (State Court) against the Debtor in December 2012. Cascade

obtained a default judgment against the Debtor on February 11, 2013 in the amount of $4,503.95,

which bore interest at 24.88% per annum and which could be augmented by the "reasonable costs

and attorney fees expended in collection of the total judgment by execution or otherwise as shall

be established by affidavit."[6] The Debtor did not appeal that judgment and has not had it set aside.

On May 23, 2016, the Debtor and Tavaras Pearson filed a chapter 7 petition in the U.S.

Bankruptcy Court for the District of Utah before the Honorable Kevin Anderson, which was

assigned case number 16-24465 (2016 Bankruptcy Case). Broadbent prepared and filed the

petition as their attorney of record. The Debtor and Mr. Pearson did not include Cascade as a

creditor, though they did list Titanium as an unsecured creditor with a $3,647 claim for the balance

owing on the auto loan.[7] Their case was an asset case, and the proof of claim deadline was June

21, 2017.[8] Cascade did not receive notice of the case in time to file a proof of claim; it only became

aware of the case in December 2017.[9] The Debtor and Mr. Pearson received a discharge on August

31, 2016.

Cascade continued its collection efforts post-discharge, and, through a succession of

communications beginning in December 2017, the parties began to stake out their positions

---

[6] Ex. 3, at 1-2.

[7] Ex. 6, at 33.

[8] While not admitted as an exhibit, the Court takes judicial notice of the docket in the 2016 Bankruptcy Case. *See Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) ("[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." (citing *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979))), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001). For the same reason, and to avoid repetition, the Court also takes judicial notice of documents on that docket and those on the docket in the present case that have not been admitted as exhibits but are cited in subsequent footnotes.

[9] Ex. 10, ¶¶ 8-9.

regarding the effect of the Debtor's discharge on Cascade's default judgment. The Debtor claimed that the judgment had been discharged in the 2016 Bankruptcy Case because she owed it to Titanium, while Cascade merely collected the debt.[10] Cascade, by contrast, contended that the Debtor owed the debt to it, not Titanium, because Titanium had transferred the debt to Cascade, which had obtained the default judgment against the Debtor in its own name.[11] Moreover, because it had not received notice of the 2016 Bankruptcy Case prior to the claims bar date and was not scheduled as a creditor, Cascade asserted that that judgment was excepted from the Debtor's discharge under 11 U.S.C. § 523(a)(3).[12]

On February 28, 2018, the State Court issued a bench warrant against the Debtor for her failure to attend a supplemental hearing and ordered her to appear before that court on September 26, 2018.[13] The day before that hearing, the Debtor filed a motion to quash the warrant, alleging that the debt asserted by Cascade had been discharged in her 2016 Bankruptcy Case and that Cascade's continued efforts to collect it violated the discharge injunction.[14] At about this time Broadbent began requesting that Cascade produce a copy of the Collection Agreement, which he believed would show that Titanium owned the judgment.

On January 11, 2019, the Debtor and Mr. Pearson moved to reopen the 2016 Bankruptcy Case, not to seek sanctions against Cascade for violating the discharge injunction, but to amend

---

[10] *See* Ex. E; Ex. G.
[11] Ex. F.
[12] Ex. D. All subsequent statutory references are to title 11 of the United States Code unless otherwise indicated.
[13] Ex. 7, at 1-2; Ex. 8, ¶ 6.
[14] Ex. 8, ¶¶ 1-5, 10.

their schedules to list Cascade as a creditor.[15] The motion, which Broadbent filed, noted that the Debtor and Mr. Pearson had listed Titanium as an unsecured creditor and believed that by doing so "any collections associated with [the] debt [to Titanium] would be included and discharged in the [2016 Bankruptcy Case]."[16] The motion further stated that Cascade had "continued to aggressively collect" from the Debtor and Mr. Pearson despite their discharge.[17] The solution proposed to end this collection activity was to add Cascade as a creditor in the hope that the judgment debt asserted by Cascade would unequivocally be discharged.[18]

Prior to the hearing scheduled on the motion to reopen, the State Court ruled on the Debtor's motion to quash, issuing an order denying it on January 15, 2019. In that order the State Court also determined, among other things, that Cascade became the Debtor's judgment creditor by virtue of the 2013 default judgment; the Debtor received notice of that judgment; the Debtor should have listed Cascade as a creditor in the 2016 Bankruptcy Case and given it notice of the same but did not do so; Cascade did not have notice of the 2016 Bankruptcy Case in time to file a proof of claim; and, crucially, Cascade's default judgment was excepted from the Debtor's discharge under § 523(a)(3).[19] The Debtor has not appealed or otherwise challenged that order in the State Court.

---

[15] Ex. 9, ¶ 7.

[16] *Id.* ¶ 3, 5.

[17] *Id.* ¶ 6.

[18] *Id.* ¶ 7. Case law makes abundantly clear, however, that such a course of action is futile: "[T]he plain language of §§ 727(b) and 523(a)(3) of the Bankruptcy Code provides that reopening the case and amending the schedules to add unlisted creditors does *not* affect whether those debts are discharged. Either the debts were discharged by the original discharge or they are not discharged under § 523(a)(3); amending the schedules is irrelevant to the issue." *In re Guseck*, 310 B.R. 400, 402 (Bankr. E.D. Wis. 2004) (collecting cases).

[19] Ex. 10, ¶¶ 3, 6, 8-10.

Broadbent withdrew the motion to reopen on the Debtor's behalf on March 18, 2019 but filed a second one on April 11, 2019.[20] In contrast to the first one, this motion sought relief to pursue discovery regarding ownership of Cascade's debt and, if warranted, file a declaratory judgment action asserting that the debt to Cascade had been discharged through the 2016 Bankruptcy Case.[21] The motion asserted that grounds existed to reopen the case because "a dispute ha[d] arisen regarding the dischargeability" of Cascade's judgment.[22] But the exact opposite was true: Only three months earlier, the State Court had put the dischargeability dispute to rest by ruling that Cascade's debt was excepted from the Debtor's discharge. Despite that recent history, the motion surprisingly did not mention the State Court's order on the motion to quash, and one would not know from reading it that another court had ruled on the § 523(a)(3) question at all.[23] The motion also asserted that it was appropriate to resolve the dischargeability dispute before Judge Anderson because bankruptcy courts have "exclusive jurisdiction over the question."[24]

Judge Anderson conducted a hearing on the motion to reopen on May 13, at which Finlay admitted that Cascade's default judgment was disclosed on a credit report and should have been

---

[20] Although this motion was signed by Logan Finlay, an attorney at Vannova Legal, PLLC, who, along with Broadbent, represented the Debtor and Mr. Pearson in the 2016 Bankruptcy Case, the motion still listed Broadbent as an attorney of record. Ex. 12, at 1, 3. Broadbent did not withdraw as counsel or cease representing the Debtor in that case. In fact, on March 15, 2019, Broadbent filed a Notice of Substitution of Counsel and Request for Notice stating that he and Finlay were substituting for himself and Val Dalling III as Debtor's counsel and requesting "that all notices and pleadings given or filed in this case continue to be served on him." Dkt. No. 30 in the 2016 Bankruptcy Case, at 1-2.

[21] Ex. 12, at 1.

[22] *Id.*

[23] The Debtor subsequently mentioned the State Court's ruling in her reply. Ex. 14, at 8.

[24] Ex. 12, ¶ 9. As implied by these statements, the Debtor's position in the motion to reopen was that the bankruptcy court could revisit the dischargeability question despite the State Court's § 523(a)(3) determination. The motion did not provide legal argument on this issue, but the reply did. *See* Ex. 14, at 8-12.

listed in the schedules in that case.[25] With respect to the motion, Finlay argued that the case should

be reopened so that the Debtor could show that Titanium owned the default judgment and that it

had been discharged in the 2016 Bankruptcy Case.[26] Judge Anderson denied the motion, holding

that he was bound by the State Court's default judgment and § 523(a)(3) ruling through the

application of the *Rooker-Feldman* doctrine.[27] The Debtor did not appeal the denial of the motion

to reopen.

The Debtor commenced the present bankruptcy case on October 18, 2019, with Broadbent

again preparing and filing the petition and representing her from the outset of the case. Seven days

later, Chad Rasmussen of Alpina Legal, who represents Cascade in this case, filed Claim 1-1. The

parties have disputed what entity was listed on that claim as the creditor, and the evidence on this

point is contradictory. The proof of claim form itself listed Cascade as the current creditor and

asserted a $14,067.46 unsecured claim against the Debtor for the deficiency on the car loan.[28] The

Court's claims register for this case, however, listed Alpina Legal as the creditor for Claim 1-1,[29]

and Rasmussen has admitted that Alpina Legal was listed as the creditor.[30]

While the evidence points in different directions, the proof of claim form is the Court's

official record and therefore provides the most probative evidence. It controls over the claims

register, which can contain errors. In fact, a prominent disclaimer posted above the first claim on

the register admits this possibility and effectively suggests that users should not rely exclusively

---

[25] Ex. 15, at 13:2-15.
[26] *Id.* at 5:15-6:18.
[27] *Id.* at 19:15- 21:19.
[28] Ex. O, at 1-2.
[29] Ex. 17, at 1.
[30] Ex. S, ¶ 3.

on it. It reads: "PLEASE NOTE: claim information on this register may not accurately reflect information contained in the proof of claim."[31] The listing of Alpina Legal as the creditor on the claims register appears to be one such mistake, though the parties introduced no evidence to explain the source of this error. As for Rasmussen's statement, the Court finds that he was likely referring to Alpina Legal's incorrect listing as the creditor on the claims register. Accordingly, the Court finds that Claim 1-1 listed Cascade as the creditor.

Rasmussen withdrew Claim 1-1 on behalf of Cascade on December 9, 2019, which was noted on the docket for this case and the claims register on that date.[32] That same day, he filed Claim 6-1 on behalf of Cascade. As with Claim 1-1, it listed Cascade as the current creditor, asserted a $14,067.46 unsecured claim based on the auto loan deficiency, and was completed and signed by Rasmussen as Cascade's attorney.[33] Claim 6-1 is, in short, indistinguishable from Claim 1-1. This time, however, the claims register correctly recorded that information.[34]

On May 14, 2020, the Debtor, through Broadbent, filed an objection to Claims 1-1 and 6-1 (Original Objection) on two grounds. First, the objection sought disallowance of both claims because they had been discharged in the 2016 Bankruptcy Case.[35] In the alternative, it argued that the claims were duplicative, and one should be disallowed.[36]

Broadbent acknowledged that he had sufficient time to investigate, research, prepare, and complete the Original Objection before filing it and that he was not under a time crunch in doing

---

[31] Ex. 17, at 1.
[32] *Id.*
[33] Ex. P, at 1-3.
[34] *See* Ex. 17, at 3.
[35] Ex. 16, ¶ 22.
[36] *Id.* ¶ 23.

so. He was aware of the State Court's order excepting Cascade's judgment from the Debtor's discharge and had reviewed Judge Anderson's ruling denying the motion to reopen before he filed the Original Objection. Broadbent also testified that he had reviewed the claims register and docket before filing the Original Objection, but he did not testify that he reviewed the actual proof of claim forms before doing so. In fact, he stated that he did not recall whether he clicked on the hyperlink on the claims register that would have taken him to the form for Claim 1-1. Broadbent did not need to consult with or obtain information from the Debtor in order to prepare the Original Objection.

The day after the Debtor filed the Original Objection, Rasmussen sent the Motion for Sanctions to Broadbent.[37] Broadbent acknowledged receipt of the motion in an e-mail dated June 9, in which he signaled his intent to pursue the argument regarding ownership of the default judgment.[38] Rasmussen responded by noting that the twenty-one-day safe harbor period had expired four days previously and cautioned Broadbent to withdraw the Original Objection immediately.[39] Broadbent did not do so, and Rasmussen filed the Motion for Sanctions on June 12, 2020. Two weeks later, Rasmussen filed a heavily redacted copy of the Collection Agreement in support of the Motion for Sanctions.[40] After discussions with the Court at a July 15 hearing, Rasmussen eventually filed an unredacted copy of the Collection Agreement on July 21.

Broadbent then amended the Debtor's objection on July 28, 2020 (Amended Objection). Notably, the Amended Objection only objected to Claim 6-1; it ceased to argue that Claims 1-1

---

[37] Ex. S, at 11.
[38] Ex. T, at 2.
[39] *See id.* at 1.
[40] Ex. L.

and 6-1 were duplicates and that Cascade's claim had been discharged in the 2016 Bankruptcy Case.[41] Instead, the Amended Objection contended that under the terms of the Collection Agreement Titanium retained exclusive ownership of the debt evidenced by the default judgment and never transferred that ownership to Cascade, which merely collected debts owed to Titanium.[42] Without ownership, the Amended Objection asserted that Cascade lacked a right to payment, rendering its claim invalid.[43] On those bases and because any debt to Titanium had been discharged in the 2016 Bankruptcy Case, the Amended Objection sought disallowance of Claim 6-1.[44]

The Court heard oral argument on the Amended Objection on September 9 and issued its decision overruling that objection from the bench on October 14, 2020. The Court held that issue preclusion prevented it from revisiting the question of whether the default judgment had been discharged in the 2016 Bankruptcy Case. The Court also determined that it could not address which entity owned the default judgment because ruling that Titanium was the owner would have the necessary effect of rendering a judgment inconsistent with the State Court's determination under § 523(a)(3). Last, the Court ruled that to the extent that the Debtor sought disallowance of

---

[41] *See* Ex. U.

[42] *Id.* ¶¶ 29-31, 35. Broadbent testified that he did not have an unredacted copy of the Collection Agreement at the time he filed the Amended Objection, but that is not true. Broadbent stated that he did not have an unredacted copy until October 28, 2020, when it was filed as an attachment to Cascade's Unsworn Declaration of Statement of Facts in Support of Its Motion for Rule 9011 Sanctions. *See* Dkt. No. 50, Ex. A. But Rasmussen had previously filed another copy a week before Broadbent filed the Amended Objection, *see* Dkt. No. 34, and Broadbent specifically cited to that copy of the Collection Agreement in the Amended Objection. Ex. U, at 2 n.4. Part of the confusion in Broadbent's testimony may have been caused by his counsel's questioning of him using Exhibit 1, which was taken from Dkt. No. 50 and therefore bears the October 28, 2020 electronic date stamp. Broadbent's exhibit list also included an unredacted copy of the Collection Agreement, *see* Ex. X, which was the standalone document filed at Dkt. No. 34 bearing the July 21, 2020 electronic date stamp.

[43] *Id.* ¶ 34.

[44] *Id.* at 17.

11

Cascade's claim by attacking or setting aside the default judgment or the § 523(a)(3) ruling as wrongful or fraudulently obtained, the *Rooker-Feldman* doctrine prevented the Court from granting that relief. The Debtor did not appeal the Court's decision.

## III. DISCUSSION

### A. Rule 9011 Standard

Rule 9011 states, in relevant part, that:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.[45]

"In short, Rule [9011] requires that a '[paper] be, to the best of the signer's knowledge, well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and not interposed for any improper purpose.'"[46] The

---

[45] Fed. R. Bankr. P. 9011(b).
[46] *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015) (quoting *Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104 (10th Cir. 1993)). While *Predator International* dealt with Rule 11, such decisions are authoritative in the Rule 9011 context. *Masunaga v. Stoltenberg (In re Rex Montis Silver Co.)*, 87 F.3d 435, 437 (10th Cir. 1996). The Court will therefore not distinguish between Rule 11 and Rule 9011 cases.

rule also "imposes an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing."[47]

Courts evaluate Rule 9011 sanctions motions under a two-step process. The first involves a determination of whether there has been a violation.[48] In making that determination, courts apply "a standard of objective reasonableness, which asks . . . 'whether a reasonable and competent attorney would believe in the merit of an argument.'"[49] A frivolous legal contention fails to meet this standard by definition since frivolousness means that the contention "has 'no chance of success,' and there is 'no reasonable argument to extend, modify or reverse the law as it stands.'"[50] As for whether the attorney made a reasonable inquiry into the facts of a case, courts have considered certain factors, including:

> (1) whether the signer of the document had sufficient time for investigation; (2) the extent to which the attorney had to rely on the client for the factual foundation underlying the pleading; (3) whether the case was accepted from another attorney; (4) the complexity of the facts and the attorney's ability to perform a sufficient pre-filing investigation; and (5) whether discovery would have been beneficial to the development of the underlying facts.[51]

---

[47] *Collins v. Daniels*, 916 F.3d 1302, 1320 (10th Cir. 2019) (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991)).

[48] *Id.* (quoting *Adamson v. Bowen)*, 855 F.2d 668, 672 (10th Cir. 1988)).

[49] *Greeley Publ'g Co. v. Hergert*, 233 F.R.D. 607, 610 (D. Colo. 2006) (quoting *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1155 (10th Cir. 1991)); *see also Predator Int'l*, 793 F.3d at 1182 ("[T]he district court must evaluate [an attorney's] conduct under a standard of 'objective reasonableness—whether a reasonable attorney admitted to practice before the district court would file such a document.'" (quoting *Adamson*, 855 F.2d at 673)).

[50] *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (quoting *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011)).

[51] *In re Ryan*, 411 B.R. at 616 (citing *Home Savs. Ass'n of Kansas City, F.A. v. Woodstock Assocs. I, Inc. (In re Woodstock Assocs. I, Inc.)*, 121 B.R. 238, 242 (Bankr. N.D. Ill. 1990)).

A paper "is not well-grounded in fact if it is contradicted by uncontroverted evidence that was or should have been known by the attorney signing the document."[52]

Although Broadbent argues that he did not intend to violate Rule 9011, there is no empty-head, pure-heart defense in the Rule 9011 context.[53] The offending party's subjective, "good faith belief in the merit of an argument is not sufficient . . . . In addition, it is not sufficient for an offending attorney to allege that a competent attorney could have made a colorable claim based on the facts and law at issue; the offending attorney must actually present a colorable claim."[54] But "[b]ecause our adversary system expects lawyers to zealously represent their clients, [the objective reasonableness] standard is a tough one to satisfy; an attorney can be rather aggressive and still be reasonable."[55] If a court finds a violation of Rule 9011, "[t]he second step is . . . to impose an appropriate sanction."[56]

**B. The Original Objection Does Not Meet the Objective Reasonableness Standard**

The Court now applies the first step of the analysis to the Original Objection, which offered two grounds to object to Claims 1-1 and 6-1. First, the debt asserted in those claims had been discharged in the 2016 Bankruptcy Case.[57] On this basis the Original Objection sought to disallow

---

[52] *Id.* (citing *In re Woodstock Assocs.*, 121 B.R. at 242).

[53] *Findlay v. Banks (In re Cascade Energy & Metals Corp.)*, 87 F.3d 1146, 1151 (10th Cir. 1996) (quoting *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986)).

[54] *White v. General Motors Corp.*, 908 F.2d 675, 680 (10th Cir. 1990) (citation omitted).

[55] *Predator Int'l*, 793 F.3d at 1182.

[56] *Collins*, 916 F.3d at 1319 (quoting *Adamson*, 855 F.2d at 672).

[57] Ex. 16, ¶ 22. This paragraph states that "Claim 1 and Claim 6 are invalid because the underlying Debt was discharged in the 2016 Bankruptcy Case." While the use of the word "underlying" perhaps foreshadows the argument concerning the ownership of Cascade's claim raised in the Amended Objection, that argument was not expressly part of the Original Objection. Broadbent testified that the argument in the Original Objection was that Claims 1-1 and 6-1 should be disallowed because they had

both claims in their entirety.[58] In the alternative, it argued that the two claims were duplicates, suggesting that one or the other should be disallowed.[59]

Cascade's Motion for Sanctions alleges that Broadbent violated three provisions of Rule 9011 by filing the Original Objection and advancing these arguments. First, Broadbent filed the Original Objection for an improper purpose, namely, to harass Cascade and cause a needless increase in Cascade's fees and costs in having to respond to it. Second, Broadbent failed to perform a reasonable inquiry under the circumstances before filing it. Third, the arguments contained therein are baseless, frivolous, and not made in good faith.

The evidence before the Court does not support the allegation that Broadbent filed the Original Objection for an improper purpose. While one effect of the Original Objection has been to increase Cascade's fees and costs, and Cascade may believe it is being harassed, there is no evidence suggesting that Broadbent filed the Original Objection for the purpose of achieving these ends.

But the Court concludes that the Original Objection violates Rule 9011 because it fails the objective reasonableness test. The legal arguments advanced to object to Claims 1-1 and 6-1 are frivolous and not colorable, while the objection itself is not well-grounded in fact because Broadbent knew or should have known of uncontroverted facts that would have compelled a reasonable attorney to abstain from advancing those arguments. The Court will address each argument in turn.

---

been discharged in the 2016 Bankruptcy Case, and the Court views that testimony as conclusive on that issue.

[58] *Id.* ¶ 24.

[59] *Id.* ¶ 23.

### 1. The Argument That Claims 1-1 and 6-1 Were Previously Discharged

The argument that Cascade's default judgment was discharged in the 2016 Bankruptcy Case is not new. The Debtor made it to the State Court, which rejected it and ruled in its order on the Debtor's motion to quash that, "[p]ursuant to 11 U.S.C. [§] 523(a)(3), the discharge entered in [the Debtor's 2016 Bankruptcy Case] does not cover the judgment [Cascade] obtained against her in this case."[60]

She presented it again to Judge Anderson, who also rejected it and stated multiple times in the course of the hearing at which he denied the motion to reopen the 2016 Bankruptcy Case that he could not enter an order inconsistent with or provide relief from the State Court's order.[61] He found that that order "includes specific findings . . . that the discharge entered did not cover the judgment [Cascade] obtained, and that the discharge injunction is not applicable."[62] He also concluded that he was "bound by these findings and [did not] see any basis to ignore them or to question their validity or whether the State Court had jurisdiction to enter them," and could not "make alternate findings that change that."[63]

---

[60] Ex. 10, ¶ 10.

[61] *See* Ex. 15, at 3:12-16 ("I don't see how I can get around the finding of the Third District Court that the debt evidenced by the default judgment is not discharged in this bankruptcy case."); 6:19-23 ("I still don't see how you get past the effect of the final, non-appealable default judgment order and the subsequent determination that that default judgment was not discharged by the bankruptcy case."); 9:18-25 ("You're asking me . . . directly or indirectly, to set aside the default judgment and to enter an order that is inconsistent with the finding of the Third District Court which says the discharge entered in [the Debtor's] bankruptcy does not cover the judgment [Cascade] obtained.").

[62] *Id.* at 20:20-21:2.

[63] *Id.* at 21:9-12, 21:15-16.

More importantly, Judge Anderson stated that the *Rooker-Feldman* doctrine prevented him from "supplant[ing], modify[ing], [or] chang[ing] a prior order of a State Court,"[64] which would include the order on the motion to quash. When it applies, the *Rooker-Feldman* doctrine deprives lower federal courts of subject-matter jurisdiction "in an action it would otherwise be empowered to adjudicate under a congressional grant of authority,"[65] and bars "a federal action that tries to *modify or set aside* a state-court judgment because the state proceedings should not have led to that judgment."[66] As relevant here, the *Rooker-Feldman* doctrine prevents a lower federal court from effectively sitting in appellate review of a state court nondischargeability judgment rendered under an exercise of the state court's concurrent jurisdiction.[67] Instead, any appeal would lie within the state court system.[68] Judge Anderson drove that point home when he stated that the Debtor "may be able to obtain some relief, but that relief needs to come from the State Court."[69]

Broadbent testified that he was aware of the State Court's order and Judge Anderson's ruling, including the specific statements regarding the State Court's determination that Cascade's

---

[64] *Id.* at 10:8-10.

[65] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005).

[66] *Mayotte v. U.S. Bank Nat'l Ass'n*, 880 F.3d 1169, 1174 (10th Cir. 2018) (citing *Exxon Mobil*, 544 U.S. at 291).

[67] *In re Massa*, 217 B.R. 412, 421 (Bankr. W.D.N.Y. 1998), *aff'd sub nom. Massa v. Addona*, No. 98-CV-6069, 1998 WL 34256560 (W.D.N.Y. July 9, 1998), *aff'd sub nom. Massa v. Addona (In re Massa)*, 187 F.3d 292 (2d Cir. 1999); *see also Hopp v. Colorado ex rel. Coffman (In re Hopp)*, 606 B.R. 889, 896 (Bankr. D. Colo. 2019) ("In the context of dischargeability proceedings, the *Rooker-Feldman* Doctrine prohibits bankruptcy courts from exerting appellate jurisdiction over dischargeability determinations made by state courts in an exercise of their concurrent jurisdiction" (citing *In re Candidus*, 327 B.R. 112 (Bankr. E.D.N.Y. 2005))).

[68] *In re Massa*, 217 B.R. at 421; *see also In re Toussaint*, 259 B.R. 96, 102 (Bankr. E.D.N.C. 2000) ("Once the debtors choose a forum and that court renders judgment, the debtors cannot then run to the other forum if the result is incorrect. They must pursue reconsideration or appellate review for that forum." (citing *In re McGregor*, 233 B.R. 406, 408 (Bankr. S.D. Ohio 1999))).

[69] Ex. 15, at 21:7-8.

judgment was excepted from the Debtor's discharge, when he filed the Original Objection on the Debtor's behalf. Broadbent therefore knew that the State Court had declared Cascade's claim nondischargeable under § 523(a)(3) and that a federal court held that it lacked jurisdiction to revisit that ruling.

Broadbent did not forthrightly portray this history in the Original Objection, however. He did not mention the motion to reopen the 2016 Bankruptcy Case at all or Judge Anderson's ruling thereon. And while he acknowledged the State Court had ruled on the motion to quash, he mischaracterized that ruling and buried the lede. Nowhere did Broadbent reveal that the State Court had rendered a judgment excepting Cascade's judgment from the Debtor's discharge under § 523(a)(3). Instead, he represented that the State Court had ruled that the Debtor's discharge "did not create an automatic exception to Cascade's judgment,"[70] a confusing and evasive description that runs counter to the State Court's clear statement on the dischargeability of Cascade's judgment. Moreover, Broadbent asserted that the State Court had "[taken] care to clarify that [it] was not ruling on the validity of the judgment," a statement that cannot be found in the order on the motion to quash.[71]

The argument advanced by Broadbent in this case that Claims 1-1 and 6-1 were previously discharged in the 2016 Bankruptcy Case runs headlong into two prior, final, non-appealable

---

[70] Ex. 16, ¶ 20.

[71] The Court assumes that Broadbent's assertion refers to the State Court's remarks on the record at the hearing on the motion to quash. But the order on the motion to quash does not incorporate by reference any findings or conclusions the State Court made on the record at that hearing. The only evidence of what the State Court said at that hearing comes from a partial transcription—apparently done by counsel—of the audio recording of the hearing, which was included as part of the Amended Objection. *See* Ex. U, at 9-10. The evidentiary problems with the transcription, including that it is incomplete, as evidenced by the use of an ellipsis, and not a certified transcript, lead the Court to assign it no evidentiary weight.

judicial determinations that held the exact opposite. As such, the argument is patently frivolous as

a legal matter, and since the Original Objection fails to adequately acknowledge and describe those

uncontroverted rulings, the objection is not well-grounded in fact. The Court has no need to

speculate whether another attorney could have constructed a colorable legal argument regarding

the dischargeability of Cascade's judgment from the facts of this case; it is enough to note that

Broadbent's argument on that issue is not colorable. The Court notes, however, that the path toward

a colorable argument would at least involve fully disclosing the prior rulings from the State Court

and Judge Anderson and addressing their legal implications, including what effect they might have

on this Court's ability to adjudicate an objection to Cascade's claim. But because Broadbent

obscured the facts and simply presented to a federal court for a second time the bald-faced assertion

that Cascade's claim had been previously discharged, the Court concludes that that argument is

not one a reasonable attorney would make and therefore fails the objective reasonableness test.[72]

### 2. The Argument That Claims 1-1 and 6-1 Are Duplicative

Broadbent asserts that, whatever the merits of his argument concerning whether Cascade's

claim was discharged in the 2016 Bankruptcy Case, he did not violate Rule 9011 because he had

---

[72] Broadbent has suggested that his argument would have been different had he received an unredacted copy of the Collection Agreement before filing the Original Objection. But this does not hold water. The lack of an unredacted copy did not prevent Broadbent from contesting ownership of the default judgment and requesting discovery on that issue in the motion to reopen the 2016 Bankruptcy Case. Even if Broadbent's suggestion were true, it does not justify advancing a plainly unsupportable argument. Broadbent had been seeking the Collection Agreement before the Debtor filed this case, suspecting that it would reveal that Titanium owned the default judgment. Yet during the period between when Cascade filed Claim 1-1 and Broadbent filed the Original Objection—an interval in excess of six months—the Court's docket shows no attempt to request the Collection Agreement from Cascade. Broadbent had ample time to obtain a document he considered relevant and investigate the ownership of the default judgment, an issue he believed would be resolved by that document.

19

a valid basis to object to Claims 1-1 and 6-1 in the Original Objection on the grounds that they

were duplicative.[73] But Rasmussen withdrew Claim 1-1 on Cascade's behalf on the same day he

filed Claim 6-1, meaning that the duplication problem alleged by Broadbent never existed.

Broadbent contends, however, that that problem remained because Claim 1-1 has never been

properly withdrawn. He posits two reasons why: first, there was never a document filed to

withdraw the claim; and, second, the party who withdrew the claim lacked the authority to do so

because it differed from the one who filed it.[74]

But the Court does not need to address the merits of the withdrawal arguments because

Broadbent never raised them as a basis to object to Cascade's claims. As noted previously, Rule

9011 states that by presenting a paper to a court, "whether by signing, filing, submitting, or later

---

[73] The substantial emphasis Broadbent placed on the duplication argument at the evidentiary hearing
marks a conspicuous departure from the position he adopted on that question once he filed the Amended
Objection, which essentially abandoned the argument. As noted in Part II, *supra*, the Amended Objection
did not argue—or even mention—duplication of claims. Moreover, in the Debtor's Response to Creditor
Cascade Collections LLC's Unsworn Declaration of Statement of Facts in Support of Its Motion for Rule
9011 Sanctions, which was filed over three months after the Amended Objection, Broadbent repeatedly
called the Original Objection "not relevant." Dkt. No. 51, ¶¶ 29-30, 35-36, 40-41. In one particular
instance, he made this statement in response to an allegation that he had objected to Claims 1-1 and 6-1
on the basis that they were duplicates. *Compare* Dkt. No. 50, ¶ 36, *with* Dkt. No. 51, ¶ 36.

    Calling the Original Objection—and the duplication argument by implication—not relevant and
effectively superseded by the Amended Objection is a far cry from touting that argument as a basis to
avoid sanctions. The Court can only surmise that Broadbent vigorously defended the duplication
argument at the evidentiary hearing to build another bulwark, however thin, against Cascade's Motion for
Sanctions. But this defense rings hollow when Broadbent himself abandoned the argument after Cascade
filed that motion. His vacillation on the duplication issue fatally weakens the position that he took at the
evidentiary hearing.

[74] Broadbent previously claimed that the withdrawal of Claim 1-1 did not appear in the claims register at
the time he filed the Original Objection and was unknown to him. Dkt. No. 51, ¶¶ 33, 40-41. Broadbent
did not introduce evidence supporting this assertion at the evidentiary hearing or even raise the issue. The
Court is skeptical that a docket event withdrawing a claim would not appear on the docket or claims
register for a period in excess of five months, but since the parties did not address this issue at the
evidentiary hearing, the Court need not address it here.

advocating" it, an attorney is certifying, among other things, that the "legal contentions *therein* are warranted."[75] In evaluating the objective reasonableness of the Original Objection the Court must therefore limit itself to the contentions therein, and the silence of that objection regarding the withdrawal arguments means that the duplication argument sinks or swims on its own.

The duplication argument plainly sinks. Rasmussen withdrew Claim 1-1 over five months before Broadbent filed the Original Objection. Broadbent testified that he had reviewed the claims register and docket before filing that objection, so the withdrawal would have been visible to him in both places. He also testified that he was not rushed in preparing the Original Objection and had ample time to investigate and research the issues therein. In addition, he had been representing the Debtor since the inception of the case and did not need to rely on her for the facts concerning whether the claims were duplicative. Based on these facts, the Court must conclude that Broadbent failed to conduct a reasonable inquiry when he objected to Claims 1-1 and 6-1 on the basis that they were duplicative. A reasonable attorney would have seen the withdrawal of Claim 1-1— something Broadbent appears to have overlooked—and, in light of that withdrawal, refrained from making the clearly frivolous and unsupported contention that Claims 1-1 and 6-1 were duplicative. As a result, the duplication argument is objectively not reasonable.

In the alternative, the Court will address the merits of the withdrawal arguments and assume that Broadbent had raised them in the Original Objection to buttress the duplication argument. But before doing so, the Court will describe their curious history. As noted previously, the Original Objection does not mention them at all. Instead, they appear for the first time in the

---

[75] Fed. R. Bankr. P. 9011(b)(2) (emphasis added).

Debtor's objection and related documents to the Motion for Sanctions.[76] Then they strangely do not find their way into the Amended Objection, and, what's more, the duplication argument disappears altogether from that objection. The Original Objection was still pending when Broadbent filed his objection to Cascade's Motion for Sanctions. If Broadbent believed that Claim 1-1 had not been properly withdrawn, as he stated in that objection, one would expect him to have amended the Original Objection to advance the withdrawal arguments and address the obvious counterargument to the duplication argument—*i.e.,* the claims register and docket plainly show that Rasmussen had withdrawn Claim 1-1 on Cascade's behalf. And if Broadbent continued to believe that Claim 1-1 had never been properly withdrawn, as he testified at the evidentiary hearing, one would expect him to have pressed the withdrawal arguments, along with the duplication argument, in the Amended Objection. But he did neither. The silence of the objections on those points undermines Broadbent's assertion that Claim 1-1 has never been properly withdrawn. Indeed, the Court questions how Broadbent can reasonably maintain that the withdrawal arguments have merit when he never raised them as a basis to object to Cascade's claims in either of the objections and then abandoned the duplication argument altogether in the Amended Objection. In the end, Broadbent only attempted to use the withdrawal arguments to oppose the Motion for Sanctions—he emphasized the arguments repeatedly at the evidentiary hearing—and the history of their usage makes clear that they were intended for that purpose alone rather than to provide a legitimate legal basis for a claim objection.[77]

---

[76] Ex. V, ¶¶ 3(a)-(e), 9; Dkt. No. 30, ¶¶ 33(a)-(e).

[77] Since the Motion for Sanctions concerns the Original and Amended Objections, the conundrum for Broadbent is that he cannot effectively use the withdrawal arguments to oppose the Motion for Sanctions unless he raised them as a basis to object to Cascade's claims.

As for the merits, an examination of the arguments on the effectiveness of Claim 1-1's withdrawal shows that they are unfounded. Regarding the first: A document is not necessary to withdraw a claim. Instead, the Court's CM/ECF system permits ECF Filers to accomplish certain tasks through the use of docket events, including withdrawal of claims.[78] In fact, Broadbent used this routine procedure to withdraw the initial motion to reopen he filed on behalf of the Debtor and Mr. Pearson in the 2016 Bankruptcy Case. The withdrawal of that motion was effective despite the lack of a document filed to accomplish it. That Broadbent contends that the very procedure he had previously used in the 2016 Bankruptcy Case is somehow ineffective to withdraw Cascade's claim in this case and has cited no legal authority to distinguish the former from the latter strikes the Court as glaringly hypocritical and utterly frivolous.[79]

Broadbent's second argument fares no better. His assertion that Alpina Legal filed Claim 1-1 while Cascade impermissibly attempted to withdraw it is belied by his statement in the Original Objection that "[b]oth [Claim 1-1 and Claim 1-6] were filed on behalf of Cascade."[80] But even assuming that this statement was not in the Original Objection, the second withdrawal argument still fails. It is based on nothing more than a superficial reading of the claims register, which

---

[78] Rule 3006 is not to the contrary. While that rule provides that a "creditor may withdraw a claim as of right by filing a notice of withdrawal," the Court does not interpret it to require a document to accomplish withdrawal, and Broadbent has cited no legal authority suggesting that it does. Instead, the docket event for withdrawing a claim in CM/ECF is sufficient. CM/ECF is an acronym for Case Management/Electronic Case Files.

[79] Broadbent underscored the baselessness of this argument when he readily admitted on cross-examination that a claim can be withdrawn without submitting a document.

[80] Ex. 16, at 1. This statement perhaps explains why Broadbent did not raise the second withdrawal argument in the Original Objection—he did not see an inconsistency between the entity that filed Claim 1-1 and the entity that withdrew it at the time he filed that objection. The statement also supports the conclusion that Broadbent created the withdrawal arguments after the Original Objection to oppose the Motion for Sanctions.

erroneously listed Alpina Legal as the creditor for Claim 1-1. Had Broadbent clicked the hyperlink for Claim 1-1 on the claims register, he would have discovered that Cascade, not Alpina Legal, was the creditor. Rasmussen filed Claim 1-1 on Cascade's behalf and when he later withdrew that claim for Cascade, he unquestionably had authority to do so, and the withdrawal was effective.[81]

In short, the evidence shows that Broadbent did not perform a reasonable inquiry into the facts before making the second withdrawal argument. The prominent disclaimer on the claims register that it "may not accurately reflect information contained in the proof of claim" all but instructed Broadbent not to rely on the claims register and instead review the actual claim form. He merely needed to go that one minor step further and examine the information on Claim 1-1 rather than rely on the claims register. The facts necessary to determine whether Cascade properly withdrew Claim 1-1 were simple and within easy reach. Broadbent's failure to ascertain them means that he did not conduct a reasonable inquiry and the second withdrawal argument is frivolous and not well-grounded in fact.

The Court concludes that both withdrawal arguments fail the objective reasonableness test. As a result, even if Broadbent had raised them in the Original Objection to buttress the contention that Claims 1-1 and 6-1 are duplicative, that would not alter the Court's conclusion that the duplication argument is objectively not reasonable.

---

[81] Broadbent's focus on Adam Stevenson as the person listed in the CM/ECF system who filed Claim 1-1 is a red herring. He implied that since the claims register showed that Stevenson filed that claim and Rasmussen withdrew it, the withdrawal was ineffective. Stevenson, however, was not some unknown person; he was an employee of Alpina Legal, Rasmussen's law firm, and presumably had authority from Rasmussen to file the claim. In short, Claim 1-1 was filed and withdrawn by the same firm on behalf of the same entity.

**C. The Amended Objection Does Not Meet the Objective Reasonableness Standard**

The Amended Objection differs substantially from the Original Objection. It only objects to Claim 6-1, and its sole basis for doing so is asserting, based on an analysis of the unredacted Collection Agreement, that Titanium, not Cascade, is the owner of the default judgment. As a result, the objection contends that Cascade has no valid claim and requests that Claim 6-1 be disallowed in its entirety.

While the ownership and validity of the default judgment seem at first glance to present a colorable basis for a claim objection, the trouble is that the Amended Objection fails to adequately address this Court's ability to rule on those issues in light of two important events that occurred after entry of that judgment. The first is the State Court's order on the motion to quash, in which that court held that Cascade became the Debtor's judgment creditor by virtue of the 2013 default judgment, which it then excepted from the Debtor's discharge under § 523(a)(3). Although the Amended Objection admits that the State Court ruled "that the Cascade debt was not discharged,"[82] it does not explain the reasoning behind that ruling or how this Court can sustain the Amended Objection without modifying or altering the State Court's order. The second is Judge Anderson's denial of the Debtor's motion to reopen the 2016 Bankruptcy Case. While the Amended Objection acknowledges that the Debtor attempted to reopen that case, it completely omits how that motion was resolved. It contains no discussion of Judge Anderson's ruling or how the *Rooker-Feldman* doctrine affects this Court's ability to hear a claim objection that could effectively have this Court sit in appellate review of the State Court's order on the motion to quash.

---

[82] Ex. U, ¶ 38.

25

Any colorable objection to Claim 6-1 would therefore have to provide a legal basis to address the State Court's order on the motion to quash and get around the *Rooker-Feldman* roadblock that Judge Anderson identified. And even though Broadbent knew of those problems—he testified that, prior to filing the Original Objection, he was aware of the State Court's order and had read Judge Anderson's ruling on the motion to reopen—the Amended Objection makes no meaningful effort on this front. Instead, it offers three perfunctory legal arguments, which, while not arguing the point directly, can be construed as implying that this Court can adjudicate the ownership and validity issues.

The first is the unremarkable observation that bankruptcy courts have authority over core proceedings. While it is true that objections to claims are one category of core proceedings,[83] the authority to decide such matters derives from the jurisdictional grant in 28 U.S.C. § 1334(b), which flows to this Court through 28 U.S.C. § 157(a) and (b)(1) and the District Court's order of reference.[84] But the *Rooker-Feldman* doctrine deprives lower federal courts of subject-matter jurisdiction to adjudicate disputes they are otherwise authorized to resolve, and a federal court previously ruled that that doctrine prevented it from resolving the same dispute the Debtor seeks to litigate through the Amended Objection. In this context, merely observing that bankruptcy courts have authority over core proceedings is beside the point. Because this argument fails to address the potential *Rooker-Feldman* problem, the Court concludes that it is frivolous and not colorable.

---

[83] 28 U.S.C. § 157(b)(2)(B).
[84] *See* DUCivR 83-7.1.

The second argument asserts that the State Court's ruling on the motion to quash was narrow in scope, in particular that it "did not rule on the validity of the [default] judgment" and "limited the ruling to 'this action on this record.'"[85] While the Amended Objection does not expand upon this argument, the Court presumes that its implied meaning is that this Court can address issues like the validity of the default judgment without running afoul of *Rooker-Feldman* or issue preclusion because the State Court did not adjudicate them.

But the characterization of the State Court's ruling as narrow lacks factual support. That ruling is embodied in the order on the motion to quash, and nowhere in that order did the State Court limit its ruling in the ways Broadbent suggests. Instead, the purported limiting statements quoted in the Amended Objection come from the uncertified, incomplete transcription of the audio recording of the hearing on the motion to quash. By referring to statements in that transcription, Broadbent's implicit premise contained within the second argument is that what the State Court said on the record can and should be used to limit or narrow what it said in its order. But this premise also lacks factual support, for three reasons.

First, without a certified transcript, the State Court's statements on the record have no evidentiary weight.[86] Second, even if a certified transcript confirmed the accuracy of the transcription in the Amended Objection, the State Court was not as unequivocal as Broadbent portrays. For example, while the State Court suggested that it was not ruling definitively on the

---

[85] Ex. U, ¶ 38.

[86] The lack of a certified transcript of the State Court's hearing on the motion to quash has plagued Broadbent and the Debtor throughout this case. The Court noted the evidentiary problems with the transcription fragment in its oral decision overruling the Amended Objection on October 14, 2020. Broadbent failed to produce a certified transcript of the State Court hearing even though the evidentiary hearing on the Motion for Sanctions took place over a year later.

validity of the default judgment perhaps due to a service defect, the State Court ultimately stated

that its "ruling is based on the fact that there is on its face a valid judgment here."[87] That statement

hardly supports Broadbent's contention that the State Court refused to address the validity of the

default judgment. Third, and most importantly, the order on the motion to quash does not

incorporate by reference any findings or conclusions made on the record at the hearing on the

motion to quash. For that reason, Broadbent's reference to what the State Court may have said on

the record—or what it may have meant—cannot limit or narrow the plain and express language of

the State Court's order on the motion to quash because that order stands on its own. The Court

concludes that Broadbent's argument to narrow the scope of that order is not well-grounded in fact

because it lacks evidentiary support and is therefore not colorable.

The third argument contends that bankruptcy courts may set aside a proof of claim based

on fraud. As support for that argument, Broadbent cites *In re Burrell-Richardson*[88] for the

proposition that a bankruptcy court may look behind a judgment and inquire into the nature of the

underlying debt to determine its dischargeability. While that principle is well-established in

bankruptcy law,[89] it is inapplicable here because a court of competent jurisdiction—the State

Court—has already decided the dischargeability of Cascade's claim. Since this principle does not

allow the Court to address the ownership and validity of the default judgment, the Court concludes

---

[87] Ex. U, at 10.

[88] *Burrell-Richardson v. Mass. Bd. of Higher Educ. (In re Burrell-Richardson)*, 356 B.R. 797 (1st Cir. BAP 2006).

[89] *Id.* at 802 ("The general principle of *Brown* and *Archer*—that bankruptcy courts should examine the underlying nature of a debt, no matter what its form, when the dischargeability of the debt is in question—has been followed by courts repeatedly.") (collecting cases).

that the third argument is not colorable and Broadbent did not perform a reasonable inquiry into the law before making it.

Any colorable legal argument addressing how this Court could rule on the ownership and validity of Cascade's default judgment despite the State Court's order on the motion to quash and Judge Anderson's order on the motion to reopen would, by necessity, require some detailed explanation. Taken together, however, the three arguments advanced by Broadbent take up slightly more than a page of the Amended Objection. None of those arguments expressly acknowledges the obstacles the Amended Objection faces, much less provides a solution to those obstacles. As a result, the Court concludes that the Amended Objection is objectively not reasonable.

Despite that conclusion, Broadbent attempts to justify the Amended Objection by arguing that he was merely pursuing what he believed was the State Court's invitation to challenge the validity of Cascade's default judgment. Broadbent describes this invitation in various terms, including a hint or an open door, but most consistently as a direction—not as a command, but more akin to a suggestion. And once the State Court provided that direction, he contends that his duty to zealously advocate on the Debtor's behalf required him to pursue it. The Court concludes that this line of reasoning is objectively not reasonable for four reasons.

First, Broadbent produced no reliable evidence to support his assertion that the State Court gave any direction to him to challenge the validity of Cascade's default judgment. Broadbent believes that the direction came during the hearing on the motion to quash, but Broadbent did not attend that hearing. Instead, he pieced together the State Court's purported direction from conversations after the fact with Russell Skousen, the Debtor's attorney in the State Court litigation

29

who did attend the hearing, and his review of the transcript of that hearing. The only evidence

Broadbent produced to support his claim of direction from the State Court was the partial

transcription of the audio recording of that hearing included as part of the Amended Objection.[90]

As noted previously, this transcription has no probative value. Whatever the State Court said on

the record at that hearing, the best evidence of the State Court's intent is its order on the motion to

quash, in which it said that Cascade "obtained a judgment against [the Debtor] and became her

judgment creditor on February 11, 2013."[91]

Second, assuming that the transcribed excerpt is accurate, the Court cannot find any

direction given by the State Court to Broadbent to challenge the validity of the default judgment,

particularly in bankruptcy court. While the State Court did state that it was not ruling definitively

on the validity of that judgment and did note that "there is an interesting issue of the retention of

an issue by the original creditor,"[92] that hardly qualifies as a direction to return to bankruptcy court

to litigate the validity question.

Third, even supposing, for the sake of argument, that the State Court did direct Broadbent

to challenge the validity of Cascade's default judgment in bankruptcy court, that would only

explain Broadbent's motion to reopen the 2016 Bankruptcy Case. Broadbent plainly did not agree

with Judge Anderson's ruling denying that motion and rejecting the attempt to litigate the validity

question, in which Judge Anderson concluded that the State Court's order on the motion to quash

"includes specific findings that . . . support the validity of the default judgment."[93] Broadbent's

---

[90] Ex. U, at 9-10.
[91] Ex. 10, ¶ 3.
[92] Ex. U, at 10.
[93] Ex. 15, at 20:20-22.

counsel argued at the hearing on the Motion for Sanctions that Judge Anderson's interpretation of

the State Court's ruling was not the same as what the State Court actually ruled. Such a statement,

with its assignment of error, naturally suggests an appeal. But rather than appeal Judge Anderson's

denial of the motion to reopen or heed his suggestion that if the Debtor wanted relief it would have

"to come from the State Court,"[94] Broadbent simply filed this case on the Debtor's behalf,

undeterred that one federal judge had ruled that he lacked subject-matter jurisdiction to adjudicate

the validity of Cascade's claim.

Broadbent's counsel acknowledged that the express intent of this case was to litigate the

validity of Cascade's default judgment in this Court—the very issue Judge Anderson would not.

Since the Debtor is not eligible for a discharge in this case,[95] the Court can only conclude that

Broadbent eschewed an appeal and filed a new bankruptcy case in the hope that the Debtor would

draw a different judge who would see the matter differently.[96] Any direction provided by the State

Court would presumably not endorse serial litigation until Broadbent achieved the result he sought.

Fourth, any direction provided by the State Court did not relieve Broadbent of his

obligation to conduct a reasonable inquiry into the facts and law before filing the Amended

---

[94] *Id.* at 21:6-12.

[95] The Code limits how often a debtor can obtain a discharge and, as relevant here, provides that a debtor is ineligible for a chapter 13 discharge if she has previously received a chapter 7 discharge in a case commenced within the four years prior to the filing of the chapter 13. § 1328(f)(1). When the Debtor filed this case on October 18, 2019, she had already obtained a chapter 7 discharge in the 2016 Bankruptcy Case, which was commenced within the four-year lookback period, thereby precluding her from receiving a discharge here.

[96] In an e-mail to Rasmussen dated June 9, 2020, Broadbent defended the Original Objection in part by stating that Cascade's claim "is a new claim in a new bankruptcy case." Ex. T, at 2. This is a distinction without a difference. That Broadbent filed a new case to litigate the validity of the default judgment through the claims allowance process does not alter or erase the prior history of that judgment.

Objection and to present a colorable, objectively reasonable basis for objecting to Cascade's claim. Broadbent's failure to address the effect of the rulings of the State Court and Judge Anderson on his challenge to the ownership and validity of Cascade's claim leads the Court to conclude that Broadbent did not comply with that obligation. As a result, his argument that the State Court directed him to challenge the default judgment does not change the Court's conclusion that the Amended Objection is objectively not reasonable.

### D. Imposition of Sanctions

Having concluded that Broadbent violated Rule 9011(b), the Court turns to subdivision (c), which permits, though does not mandate, the Court to "impose an appropriate sanction" for such violation, subject to certain conditions and limitations.[97] Before reaching that question, however, the Court must find that Cascade complied with two provisions for initiating a sanctions motion. The first condition requires Cascade to have made its Motion for Sanctions "separately from other motions or requests" and to have "describe[d] the specific conduct alleged to violate subdivision (b)."[98] The Motion for Sanctions satisfies this requirement.

Second, Cascade must have complied with the safe harbor provision of Rule 9011, which states that a "motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion . . . the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."[99] This provision was "intended to 'protect

---

[97] Fed. R. Bankr. P. 9011(c); *see also McCabe v. Harmes (In re Harmes)*, 423 B.R. 678, 681 (Bankr. D.N.M. 2010) ("[W]hen a Court finds a violation of the rule, it may but is not required to award sanctions." (citing Fed. R. Bankr. P. 9011(c))).
[98] Fed. R. Bankr. P. 9011(c)(1)(A).
[99] *Id.*

litigants from sanctions whenever possible in order to mitigate Rule [9011]'s chilling effects, formalize procedural due process considerations such as notice for the protection of the party accused of sanctionable behavior, and encourage the withdrawal of papers that violate the rule without involving the district court."[100] "Compliance with the 'safe harbor' provision is mandatory."[101] Cascade satisfied this requirement. It served the Motion for Sanctions on Broadbent on May 15, 2020, and the Original Objection was not withdrawn or amended within twenty-one days. Cascade then filed the Motion for Sanctions a week after the expiration of the safe harbor period.

Next, Rule 9011 limits sanctions "to what is sufficient to deter repetition of [the offending] conduct or comparable conduct by others similarly situated."[102] The Tenth Circuit has emphasized that while such sanctions "serve several purposes, including (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management," deterrence remains their primary

---

[100] *Roth v. Green*, 466 F.3d 1179, 1192 (10th Cir. 2006) (quoting 5A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure*, § 1337.2, at 722 (3d ed. 2004)); *see also In re Ryan*, 411 B.R. at 616-17 ("The purpose of the requirement is to give the offending party the opportunity, within twenty-one days after service of the motion[] for sanctions, to withdraw or correct the offending pleading in order to avoid the imposition of sanctions. This provision serves the laudable purpose of requiring litigants to dispose of frivolous claims without judicial involvement. Rule [9011(c)] was designed to ensure due process and give the potentially offending party a full and fair opportunity to respond and show cause before sanctions are imposed." (citations and internal quotation marks omitted)).

[101] *Agjunction LLC v. Agrian Inc.*, No. 14-CV-2069-DDC-KGS, 2015 WL 416440, at *6 (D. Kan. Jan. 30, 2015) (citing *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528-29 (10th Cir. 1997)); *see also In re Ryan*, 411 B.R. at 616 ("The 'safe harbor' provision in Bankruptcy Rule 9011(c)(1)(A) is a mandatory procedural prerequisite and sanctions imposed without compliance are improper." (citing *In re McNichols*, 258 B.R. 892, 902-03 (Bankr. N.D. Ill. 2001))).

[102] Fed. R. Bankr. P. 9011(c)(2).

33

aim.[103] While the rule gives courts discretion to fashion a sanction according to the circumstances of a particular case, including requiring the offending party to pay the movant's attorney's fees and expenses,[104] a court "must consider the purposes to be served by the imposition of sanctions."[105]

When a court elects to impose fees and expenses as a sanction, however, additional restrictions come into play. The text of the rule requires that the fees and expenses be reasonable, "incurred as a direct result of the violation" of Rule 9011, and "warranted for effective deterrence."[106] The Tenth Circuit has distilled these concerns into a test whose factors courts "must expressly consider . . . when determining the monetary sanctions appropriate in a given case, all of which serve as limitations on the amount assessed."[107] Those factors are: (1) the reasonableness of the fees under a lodestar analysis, (2) the minimum amount necessary to deter the offending party, and (3) the offending party's ability to pay.[108] In addition, a court "may consider [other] factors such as the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances."[109]

---

[103] *White*, 908 F.2d at 683 (citations omitted).

[104] *Id.* ("Although the rule specifically allows the award of attorney's fees to the opposing party as an appropriate sanction, the award of fees 'is but one of several methods of achieving the various goals of Rule 11.'" (quoting *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988))).

[105] *King v. Fleming*, 899 F.3d 1140, 1148 (10th Cir. 2018).

[106] Fed. R. Bankr. P. 9011(c)(2).

[107] *White*, 908 F.2d at 684.

[108] *Id.* at 684-85.

[109] *Id.* at 685 (citation omitted).

34

Cascade has requested that the Court sanction Broadbent by requiring him to pay, at a minimum, some amount of the attorney's fees and costs it has incurred in connection with the Original and Amended Objections. The Court accepted Rasmussen's declaration in support of Cascade's fees subject to cross-examination, but Broadbent chose not to cross-examine Rasmussen on the declaration. Attached to the declaration is a table of Rasmussen's billing entries concerning the two objections, which shows that he billed 30.4 hours at $250 per hour, yielding $7,600 in total fees.[110] The declaration also states that Cascade incurred $83.95 in costs to have the hearing on the motion to reopen the 2016 Bankruptcy Case transcribed and $6.55 to obtain a certified copy of the State Court's order on the motion to quash.[111]

The Court will analyze Cascade's fees and costs under the multi-factor test prescribed by the Tenth Circuit. As for the first factor, one arrives at the lodestar by taking the number of hours reasonably expended and multiplying it by a reasonable hourly rate.[112] The Court concludes that Rasmussen's hourly rate of $250 per hour is quite reasonable compared to the rates charged by bankruptcy attorneys in this district. All of the billing entries show work that was incurred as a direct result of Broadbent's violation of Rule 9011 and are largely reasonable. But the entries for October 14, 2020, December 8, 2020, and August 24, 2021, which all concern Rasmussen's appearances at telephonic hearings in this case, show excess billed time and require reductions. Regarding Cascade's costs, the Court concludes that they were incurred as a direct result of Broadbent's violation of Rule 9011, and the amount of $90.55 is reasonable.

---

[110] Ex. 18, at 11.
[111] *Id.* ¶ 30.
[112] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The October 14 entry states that Rasmussen performed 0.9 hours of work "participating in Court's telephonic ruling on [A]mended [O]bjection."[113] But the hearing the Court held in this case on that day lasted for just under thirty-four minutes.[114] The greatest amount of time Rasmussen could have participated in that hearing was 0.6 hours. The Court will therefore reduce the October 14 time entry by 0.3 hours.

Similarly, the December 8 entry states that Rasmussen billed 1.6 hours for "participating in Court's telephonic hearing on [M]otion for [S]anctions."[115] Again, the hearing was shorter than the billed time, in this instance substantially so. The hearing lasted just over five minutes,[116] so Rasmussen could only bill for 0.1 hours. The Court will reduce this entry by 1.5 hours.

Finally, the August 24 entry states that Rasmussen billed 0.5 hours for "participating in Court's telephonic status hearing on [M]otion for [S]anctions."[117] The August 24 hearing clocked in at just under six minutes.[118] Therefore, Rasmussen could only bill for 0.1 hours, and the Court will reduce this entry by 0.4 hours.

---

[113] Ex. 18, at 11. The Court interprets participation in this context to mean attendance at the hearing. It does not include travel to the courthouse since the hearing was held telephonically. And it does not include preparation for the hearing because there are other time entries where Rasmussen billed for "preparing for and participating in" hearings. *Id.* (time entries for June 24, 2020, July 15, 2020, and September 9, 2020). The Court therefore interprets the omission of preparation in the description of the entries for October 14, 2020, December 8, 2020, and August 24, 2021 as meaningful and distinguishes them from the entries where preparation is included.

[114] *See* Dkt. No. 45, at 1 (listing the run time of the audio file of the hearing as thirty-three minutes and forty-nine seconds).

[115] Ex. 18, at 11.

[116] *See* Dkt. No. 52, at 1 (listing the run time of the audio file of the hearing as five minutes and twenty-seven seconds).

[117] Ex. 18, at 11.

[118] *See* Dkt. No. 61, at 1 (listing the run time of the audio file of the hearing as five minutes and forty-three seconds).

36

After total reductions of 2.2 hours, the Court concludes that Rasmussen reasonably expended 28.2 hours of work in relation to the Original and Amended Objections.[119] Multiplying that figure by Rasmussen's hourly rate results in presumptively reasonable fees of $7,050.

As regards the second factor—the minimum amount necessary to deter the offending party—the Court concludes that a sanction of $7,140.55, consisting of Cascade's fees calculated under the lodestar analysis plus its costs, is necessary to deter Broadbent or others similarly situated. As noted previously, the issues Broadbent raised in the Original and Amended Objections had been considered and rejected by two courts. The proper course would have been to appeal Judge Anderson's ruling or return to State Court. Instead, Broadbent filed this case, in which the Debtor is ineligible for a discharge, for the apparent purpose of relitigating those issues again. And once that process began, he made arguments to the Court lacking in factual and legal support—arguments that were objectively not reasonable. That kind of persistent presentation of unfounded arguments suggests that the entire amount of $7,140.55 is necessary to deter Broadbent from this type of conduct.

The third factor requires the Court to examine the offending party's ability to pay. Neither party introduced any evidence on this point, but the Tenth Circuit treats inability to pay the sanction in question as an affirmative defense and places the burden on the sanctioned party to provide

---

[119] Rasmussen's declaration states that not all of the time he spent on these matters is listed on the table. Ex. 18, at 10. The Court cannot evaluate the reasonableness of unbilled time, however, and Rasmussen's suggestion that he could have billed more time does not insulate the time he did bill from scrutiny under the lodestar analysis.

proof of their financial status.[120] Therefore, the Court concludes that Broadbent's silence on this matter does not require a reduction in the sanction.

As for the remaining factors, the Court does not believe that they alter the type of sanction imposed or the amount. To be sure, the Court does not want to discourage litigation intended to defend a debtor's discharge, but it does not believe that imposition of sanctions against Broadbent under the circumstances of this case does so. Regarding the severity of the violation, the Court is frustrated that Broadbent omitted relevant information from both objections and made arguments that prior courts had rejected without explaining the effect of those rejections.

Broadbent contends that he should not be sanctioned because he was not warned that he should stop pursuing the argument regarding the ownership and validity of the default judgment. But this is not true. Judge Anderson's ruling denying the motion to reopen, with its conclusion that he lacked subject-matter jurisdiction to revisit the issues the Debtor wanted to litigate and its admonition that the Debtor needed to seek relief in the State Court, acted at least as an implied warning to Broadbent to stop advancing that argument in bankruptcy court. If that were not enough, Broadbent expressly and unequivocally received a warning when Rasmussen served him with a copy of the Motion for Sanctions and, later, when Rasmussen cautioned him in the June 9 e-mail to withdraw the Original Objection immediately. Broadbent simply failed to heed that warning.

---

[120] *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1160 (10th Cir. 1991) (quoting *White*, 908 F.2d at 685).

## IV. CONCLUSION

There were ways for Broadbent to argue on the Debtor's behalf without crossing the line from zealous advocacy to sanctionable conduct. The Court's chief concern with Broadbent's actions in this case are his omission of relevant facts and continued pressing of arguments that had been previously rejected without accounting for the effect of those rejections. The Court will impose a monetary sanction against Broadbent and require him to pay Cascade $7,140.55. A separate Order and Judgment will be issued in accordance with this Memorandum Decision.

_____END OF DOCUMENT_____

_____oOo0Ooo_____

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

| | |
|---|---|
| Matthew K. Broadbent | matt@vannovalegal.com, vannova.ecf@gmail.com, broadbentmr74548@notify.bestcase.com, vannovalegal@ecf.courtdrive.com, encoreresss.inbound@gmail.com, ecfarchive@vannovalegal.com |
| Chad Rasmussen | chad@alpinalegal.com, contact@alpinalegal.com |
| Dean A. Stuart | dean@brucerichards.law, lynn@richardsandassociateslawoffice.com |
| Lon Jenkins | ecfmail@ch13ut.org, lneebling@ch13ut.org |
| U.S. Trustee | USTPRegion19.SK.ECF@usdoj.gov |

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

- None.